UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| MARY VENTURA, WILLIAM LITTLEJOHN, and RYAN KADOTA | ) ) ) | Case No.: 4:15-cv-00481-JEG-CFB |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | **DEFENDANT'S ANSWER TO COMPLAINT** |
| PRINCIPAL MANAGEMENT CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

Defendant Principal Management Corporation ("PMC") answers Plaintiffs' complaint

("Complaint") as follows:

## NATURE OF THE ACTION

1.       Plaintiffs bring this action on behalf of and for the benefit of LargeCap Growth I Fund, SmallCap Growth I Fund,[1] SmallCap Fund,[2] High Yield Fund, MidCap Fund,[3] and MidCap Value III Fund (collectively, the "Funds") against Defendant pursuant to Section 36(b) of the Investment Company Act of 1940 (the "ICA") as amended 15 U.S.C. §80a-35(b) ("Section 36(b)").

**ANSWER:**  PMC admits the allegations in footnote 2 in Paragraph 1, but denies the

allegations in footnotes 1 and 3 in Paragraph 1.  The remaining allegations in Paragraph 1 are

legal conclusions that do not require an admission or denial, but to the extent that they do, PMC

denies each and every remaining allegation contained in this paragraph.

2.       Defendant is the investment adviser to the Funds and receives an annual fee from each Fund for purportedly providing investment advisory services to each such Fund.  Under

---

[1] Principal's SmallCap Growth II Fund merged into the SmallCap Growth I Fund in or around 2013.

[2] The SmallCap Fund was known as SmallCap Blend Fund until August 31, 2015.

[3] The MidCap Fund was known as MidCap Blend Fund until March 31, 2013.

Section 36(b), Defendant owes a fiduciary duty to the Funds with respect to the investment advisory fees paid by each such Fund.  Defendant, however, has breached that fiduciary duty by receiving investment advisory fees from each of the Funds that are so disproportionately large that they bear no reasonable relationship to the value of the services provided by Defendant and could not have been the product of arm's-length bargaining.

**ANSWER:**  Paragraph 2 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 2 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that it is the investment adviser to the Funds and avers that it receives a management fee from each Fund in exchange for providing services to each such Fund.  PMC admits that Section 36(b) of the ICA provides that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser."  PMC denies the remaining allegations in Paragraph 2.

3.      In particular, Defendant delegates substantially all of its responsibilities for providing investment advisory services to the Funds to investment sub-advisers.  Despite delegating substantially all of the investment advisory services to sub-advisers, Principal retained over two-thirds of the advisory fee it receives from the Funds.  Through this arrangement, Principal is able to retain annual fees of almost $100 million, despite performing minimal services for the Funds.  In the most recently reported fiscal year, alone, Defendant charged the Funds over $143 million in investment advisory fees, representing *a mark-up of over $97 million*, or approximately 212% over the amount Defendant paid to the Funds' sub-advisers for providing substantially all investment advisory services to the Funds.[4]

---

[4] The most recently reported fiscal year for the Funds ended October 31, 2014.

**ANSWER:**  Paragraph 3 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 3 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC denies the allegations in the first three sentences of Paragraph 3 and in footnote 4.  With respect to the final sentence in Paragraph 3, PMC admits that, as reported in the Statement of Information, dated March 1, 2015 (as amended and restated August 24, 2015), the total management fees it received from the six subject Funds totaled approximately $143 million for the year-ended October 31, 2014, and denies the remaining allegations in this sentence.

4.     In other words, the net fees received by Principal—the vast majority of which were retained as profits due to Principal's low costs for providing oversight services—were significantly greater than the fees charged by the Funds' sub-advisers for performing substantially all investment advisory services for the Funds.  Accordingly, Principal breached its fiduciary duty under Section 36(b) by charging the Funds grossly excessive investment advisory fees, as evidenced by the nature and quality of Defendant's services, Defendant's costs and profitability, the fees charged by other investment advisors (e.g., the Funds' sub-advisers), and the inherent lack of care and consciousness in negotiating Principal's advisory fees.

**ANSWER:**  Paragraph 4 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 4 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC denies the allegations in Paragraph 4.

5.     Defendant's breach of fiduciary duty is further evidenced by its failure to share economies-of-scale savings with the Funds and their security holders.  The Funds' investment advisory fee arrangements have enabled Defendant to retain for itself the benefits of economies of scale resulting from increases in each of the Funds' assets under management ("AUM") during recent years, without appropriately sharing those benefits with the Funds.  The aggregate amount of investment advisory fees paid by the Funds has increased by more than 419% in recent years, growing from approximately $27,616,000 fiscal year 2009 to $143,329,000 in fiscal year 2014.  However, the increase in fees paid by each of the Funds to Defendant was not accompanied by a proportionate increase in the services provided by Defendant or in the cost or quality of the investment advisory services provided to the Funds.  In fact, most of the Funds

have underperformed their respective one and/or five-year benchmarks.  Therefore, the increase in fees paid resulted in increased profits for Defendant at the expense of the Funds.

**ANSWER:**  Paragraph 5 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 5 contains

multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

with respect to the third sentence in Paragraph 5, PMC admits that, as reported in the Statement

of Information, dated March 1, 2015 (as amended and restated August 24, 2015), the total

management fees it received from the six subject funds for fiscal year 2014 totaled

approximately $143,329,000.  PMC denies the remaining allegations in Paragraph 5.

6.      Plaintiffs bring this action to recover for each of the Funds the excessive and unlawful investment advisory fees in violation of Section 36(b), as well as lost profits and other actual damages caused by each of the Funds' payment of those fees.

**ANSWER:**  PMC admits that Plaintiffs seek damages in this action, but denies the

remaining allegations in Paragraph 6.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Section 36(b) of the ICA, 15 U.S.C. § 80a-35(b).

**ANSWER:**  The allegations in Paragraph 7 are legal conclusions that do not require an

admission or denial, but to the extent that they do, PMC denies each and every allegation

contained in this paragraph.

8.      This Court has jurisdiction of the claims pursuant to Sections 36(b)(5) and 44 of the ICA, 15 U.S.C. §§ 80a-35(b)(5), 80a-43, and 28 U.S.C. § 1331.

**ANSWER:**  The allegations in Paragraph 8 are legal conclusions that do not require an

admission or denial, but to the extent that they do, PMC denies the allegations.

9.      Venue is proper in this judicial district pursuant to Section 44 of the ICA, 15 U.S.C. § 80a-43, and 28 U.S.C. § 1391 because Defendant is an inhabitant of this district,

maintains an office in this district, and/or transacts business in this district, and because certain of the acts and transactions giving rise to Plaintiffs' claims occurred in this district.

**ANSWER:**  PMC states the allegations in Paragraph 9 are legal conclusions that do not require an admission or denial, but to the extent that they do, PMC admits that venue is proper in this judicial district.

## THE PARTIES

**Plaintiffs**

10.     Plaintiff Mary Ventura is a security holder of the LargeCap Growth I Fund, SmallCap Growth I Fund, SmallCap Fund, and MidCap Value III Fund.

**ANSWER:**  PMC denies the allegations in Paragraph 10 for lack of information, pursuant to Fed. R. Civ. P. 8(b)(5).

11.     Plaintiff William Littlejohn is a security holder of the High Yield Fund.

**ANSWER:**  PMC denies the allegations in Paragraph 11 for lack of information, pursuant to Fed. R. Civ. P. 8(b)(5).

12.     Plaintiff Ryan Kadota is a security holder of the MidCap Fund.

**ANSWER:**  PMC denies the allegations in Paragraph 12 for lack of information, pursuant to Fed. R. Civ. P. 8(b)(5).

**Subject Funds**

13.     Each of the Funds is organized as investment portfolio of Principal Funds, Inc.[5] Principal Funds, Inc. is a registered, open-end management investment company, incorporated in Maryland with principal executive offices at 655 9th Street, Des Moines, Iowa.  Principal Funds, Inc. is a subsidiary of Principal Financial Group, Inc. and operates under Principal Global Investors, the asset management arm of Principal Financial Group, Inc. Each of the Funds operate as an independent mutual fund.

**ANSWER:**  PMC admits the allegations in Paragraph 13.

---

[5] Principal Funds, Inc. was previously known as Principal Special Markets Fund, Inc. and Principal Investors Fund, Inc.

**Defendant**

14.     Defendant is an Iowa corporation with principal executive offices at 655 9th Street, Des Moines, Iowa.  Defendant is a wholly-owned subsidiary of Principal Financial Services, Inc., an affiliate of Principal Life Insurance Company, and an indirect subsidiary of Principal Financial Group, Inc. Defendant launches and manages equity, fixed income, and balanced mutual funds for its clients.

**ANSWER:**  PMC admits the first two sentences of Paragraph 14.  PMC affirmatively states that it acts as the investment advisor for mutual funds.  PMC denies the remaining allegations in Paragraph 14.

## THE FUNDS' ORGANIZATION AND OPERATIONS

15.     Each of the Funds is an open-end management investment company, also known as a "mutual fund," registered under the ICA.  Like other mutual funds, the Funds are collective investments that pool money from investors and invest the money in a portfolio of securities. The Funds issue securities to investors, such as Plaintiffs, who invest money in a Fund, and those investors become security holders in the Fund.  Each security issued by a Fund represents, and may be redeemed for, a pro rata interest in the Fund's underlying portfolio of securities (less any fees and other liabilities).

**ANSWER:**  Paragraph 15 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 15 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC states that Paragraph 15 fails to assert any claims against PMC and, therefore, no response is required.  To the extent any of the allegations in this paragraph may be construed as claims against PMC, they are denied.

16.     Like most other mutual funds, the Funds do not have employees or facilities of their own.  The Funds' operations are conducted by external service providers pursuant to contracts with the Funds.  Each of the Funds is overseen by a Board of Directors (the "Board"), which is responsible for selecting and monitoring the Funds' service providers, among other things.

**ANSWER:**  Paragraph 16 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 16 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that each of the Funds is overseen by a Board of Directors and that the Board is responsible for, among other things, selecting and monitoring the Funds' service providers.  PMC denies the remaining allegations in Paragraph 16.

17.     The Funds are part of the complex of Principal Funds, Inc. mutual funds that consists of at least eighty-four mutual funds (including the Funds) (collectively, the "Principal Funds").  Defendant serves as the investment adviser for all of the eighty-four Principal Funds (including the Funds).  According to Defendant's May 2015 Form ADV filed with the SEC, Defendant employs only fifteen personnel to perform investment advisory services for the Principal Funds.  In addition, the same Board oversees each of the Principal Funds.

**ANSWER:**  Paragraph 17 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 17 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that the Funds are part of the Principal Funds, Inc. complex of mutual funds that consists of the Funds as well as other funds.  PMC further admits that it serves as the investment advisor for the Funds and that the Board oversees the Funds.  PMC's November 2015 Form ADV, as filed with the SEC, states (among other things) that PMC employs 169 individuals, including 15 individuals who perform investment advisory functions.  PMC denies the remaining allegations in Paragraph 17.

## MANAGEMENT AGREEMENTS BETWEEN
## DEFENDANT AND THE FUNDS

18.     Defendant serves as the investment adviser to the Funds pursuant to the Principal Funds, Inc. Amended and Restated Management Agreement, dated September 30, 2015, between

Defendant and Principal Funds, Inc. (the "Management Agreement").  The Management Agreement details the parties' obligations.

**ANSWER:** PMC admits the first sentence in Paragraph 18.  With respect to the second sentence, PMC denies Plaintiffs' allegations characterizing the Management Agreement because the document speaks for itself.

19.     The Management Agreement requires Defendant to provide the following investment advisory services to the Funds:[6]

(a)      Provide investment research, advice and supervision;

(b)      Provide investment advisory, research and statistical facilities and all clerical services relating to research, statistical and investment work;

(c)      Furnish to the Board of Directors of the Fund (or any appropriate committee of such Board), and provide ongoing review, evaluation and revision from time to time as conditions require of, a recommended investment program for the portfolio of each Series of the Fund consistent with each Series' investment objective and policies, including any recommendation for any combination or liquidation of Series;

(d)      Where applicable, based upon research, analysis and due diligence, recommend to the Board of Directors of the Fund one or more sub-advisers for a Series of the Fund; regularly monitor and evaluate each subadviser's performance, and recommend changes to the sub-advisers in situations in which appropriate;

(e)      Implement such of its recommended investment program for each Series as the Fund shall approve, by placing orders for the purchase and sale of securities, subject always to the provisions of the Fund's Articles of Incorporation and Bylaws and the requirements of the Investment Company Act of 1940, as amended (the "1940 Act"), and the Fund's Registration Statement, current Prospectus and Statement of Additional Information, as each of the same shall be from time to time in effect;

(f)      Advise and assist the officers of the Fund in taking such steps as are necessary or appropriate to carry out the decisions of its Board of Directors and

---

[6] Previous versions of the management agreement in effect during the year leading up to the filing of this Complaint required Defendant to provide the same services to the Funds (unless otherwise noted herein).  All versions of the management agreement in effect during the year leading up the filing of this Complaint are collectively referred to herein as the "Management Agreement."

any appropriate committees of such Board regarding the general conduct of the
investment business of each Series; and

(g)     Report to the Board of Directors of the Fund at such times and in such
detail as the Board may deem appropriate in order to enable it to determine that
the investment policies of each Series are being observed.

**ANSWER:** Paragraph 19 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 19

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC states that Plaintiffs' definition of Management Agreement in Footnote 6 includes

agreements from multiple years that are not identically drafted and, in any event, each of those

documents speaks for itself.  PMC denies the remaining allegations in Paragraph 19.

20.     The Management Agreement also requires Defendant to provide the following
administrative services for each of the Funds:

(a)     furnish the services of such of the Manager's officers and employees as
may be elected officers or directors of the Fund, subject to their individual
consent to serve and to any limitations imposed by law;

(b)     furnish office space, and all necessary office facilities and equipment, for
the general corporate functions of the Fund (i.e., functions other than
(i) underwriting and distribution of [Fund shares]; (ii) custody of [Fund assets];
(iii) transfer and paying agency services; and (iv) corporate and portfolio
accounting services);

(c)     furnish the services of executive and clerical personnel necessary to
perform the general corporate functions of the Fund;

(d)     design, develop, implement and regularly monitor appropriate compliance
processes; and

(e)     prepare, or provide oversight and review of the preparation of, registration
statements, shareholder reports and other disclosure materials and regulatory
filings for each Series.[7]

---

[7] Items (d) and (e) were not included in the Management Agreement until September 22, 2015.

**ANSWER:**  Paragraph 20 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 20 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC states that Plaintiffs' definition of Management Agreement in Footnote 6 includes agreements from multiple years that are not identically drafted and, in any event, each of those documents speaks for itself.  PMC denies the remaining allegations in Paragraph 20.

21.    In addition, the Management Agreement requires Defendant to provide the following accounting services for each of the Funds:

(a)    Maintain fund general ledger and journal;

(b)    Prepare and record disbursements for direct expenses of each Series;

(c)    Prepare daily money transfer;

(d)    Reconcile all bank and custodian accounts of each Series;

(e)    Assist Fund independent auditors as appropriate;

(f)    Prepare daily projection of available cash balances;

(g)    Record trading activity for purposes of determining net asset values and daily dividend;

(h)    Prepare daily portfolio valuation report to value portfolio securities and determine daily accrued income;

(i)    Determine the net asset value per share of each Series daily or at such other intervals as the Fund may reasonably request or as may be required by law;

(j)    Prepare monthly, quarterly, semi-annual and annual financial statements;

(k)    Provide financial information for reports to the [SEC] in compliance with the provisions of the [ICA] and the Securities Act of 1933;..  the Internal Revenue Service and any other regulatory or governmental agencies as required;

(l)    Provide financial, yield, net asset value, and similar information to National Association of Securities Dealers, Inc., and other survey and statistical agencies as instructed from time to time by the Fund;

(m)     Investigate, assist in the selection of and conduct relations with custodians, depositories, accountants, legal counsel, insurers, banks and persons in any other capacity deemed to be necessary or desirable for the operations of each Series; and

(n)     Obtain and keep in effect fidelity bonds and directors and officers/errors and omissions insurance policies for the Fund in accordance with the requirements of the [ICA] and the rules thereunder, as such bonds and policies are approved by the Fund's [Board].

**ANSWER:**  Paragraph 21 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 21 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC states that Plaintiffs' definition of Management Agreement in Footnote 6 includes agreements from multiple years that are not identically drafted and, in any event, each of those documents speaks for itself.  PMC denies the remaining allegations in Paragraph 21.

22.     In exchange for the investment advisory and accounting services provided above, the Management Agreement requires each Fund to pay Defendant an annual fee that is calculated as a percentage of the Fund's AUM ("investment advisory fee").

**ANSWER:**  PMC states that the referenced agreement speaks for itself, and denies the remaining allegations in Paragraph 22.

23.     Since at least 2011, the LargeCap Growth I Fund's investment advisory fee rate has been determined according to the following breakpoint schedule, which reduces the rate paid as the LargeCap Growth I Fund's AUM increase:

| AUM | Fee Rate |
|---|---|
| Up to $500 million | 0.66% |
| From $500 million to $1 billion | 0.64% |
| From $1 billion to $1.5 billion | 0.62% |
| From $1.5 billion to $2 billion | 0.61% |
| From $2 billion to $3 billion | 0.60% |
| Over $3 billion | 0.59% |

The LargeCap Growth I Fund paid Defendant an effective investment advisory fee rate of sixty basis points, or 0.60%, during its most recently reported fiscal year ended October 31, 2014, pursuant to the above fee schedule.[8] The LargeCap Growth I Fund paid Defendant approximately $44,159,000 in investment advisory fees during fiscal year 2014.

**ANSWER:**  Paragraph 23 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 23 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits the allegations in Paragraph 23, except denies the second to last sentence in Paragraph 23 because Plaintiffs have not cited to any document or source that uses the term "effective investment advisory fee rate," and also denies the allegations in footnote 8.

24.     Effective April 25, 2014, the SmallCap Growth I Fund's investment advisory fee rate has been determined according to the following breakpoint schedule, which reduces the rate paid as the SmallCap Growth I Fund's AUM increase:

| AUM | Fee Rate |
|---|---|
|  |  |

[8] The effective investment advisory fee rates for each Fund included herein are from the Funds' respective prospectus for the given fiscal year.  Upon information and belief, the effective investment advisory fee rate is the weighted average of the rates paid by the Fund on each level of AUM.  During fiscal 2014, Defendant was required by contract to limit the fee it charged the LargeCap Growth I Fund by 0.016%.  The fee waiver remains in effect until its expiration on February 29, 2016.

| AUM | Fee Rate |
|---|---|
| Up to $500 million | 1.10% |
| From $500 million to $1 billion | 1.08% |
| From $1 billion to $1.5 billion | 1.06% |
| From $1.5 billion to $2 billion | 1.05% |
| From $2 billion to $3 billion | 1.04% |
| Over $3 billion | 1.03% |

The SmallCap Growth I Fund paid Defendant an effective investment advisory fee rate of 107 basis points, or 1.07%, during its most recently reported fiscal year ended October 31, 2014, pursuant to the above fee schedule.[9] The SmallCap Growth I Fund paid Defendant approximately $20,455,000 in investment advisory fees during fiscal year 2014.

**ANSWER:**  Paragraph 24 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 24

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits the allegations in Paragraph 24, except denies the second to last sentence in

Paragraph 24 because Plaintiffs have not cited to any document or source that uses the term

"effective investment advisory fee rate," and also denies the allegations in footnote 9.

25.    Since at least 2011, the SmallCap Fund's investment advisory fee rate has been determined according to the following breakpoint schedule, which reduces the rate paid as the SmallCap Fund's AUM increase:

| AUM | Fee Rate |
|---|---|
| Up to $500 million | 0.75% |

---

[9] During fiscal 2014, Defendant was required by contract to limit the fee it charged the SmallCap Growth I Fund by 0.072%.  The fee waiver remains in effect until its expiration on February 29, 2016.

| AUM | Fee Rate |
|---|---|
| From $500 million to $1 billion | 0.73% |
| From $1 billion to $1.5 billion | 0.71% |
| Over $1.5 billion | 0.70% |

The SmallCap I Fund paid Defendant an effective investment advisory fee rate of seventy-five basis points, or 0.75%, during its most recently reported fiscal year ended October 31, 2014, pursuant to the above fee schedule.  The SmallCap I Fund paid Defendant approximately $3,875,000 in investment advisory fees during fiscal year 2014.

**ANSWER:** Paragraph 25 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 25

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits the allegations in Paragraph 25, except denies the second to last sentence in

Paragraph 25 because Plaintiffs have not cited to any document or source that uses the term

"effective investment advisory fee rate."

26.     Since at least 2008, the High Yield Fund's investment advisory fee rate has been determined according to the following breakpoint schedule, which reduces the rate paid as the High Yield Fund's AUM increase:

| AUM | Fee Rate |
|---|---|
| Up to $250 million | 0.625% |
| Over $250 million | 0.50% |

The High Yield Fund paid Defendant an effective investment advisory fee rate of fifty-one basis points, or 0.51%, during its most recently reported fiscal year ended October 31, 2014, pursuant to the above fee schedule.  The High Yield Fund paid Defendant approximately $20,618,000 in investment advisory fees during fiscal year 2014.

**ANSWER:**  Paragraph 26 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 26 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits the allegations in Paragraph 26, except denies the second sentence in Paragraph 26 because Plaintiffs have not cited to any document or source that uses the term "effective investment advisory fee rate."

27.     Since at least 2013, the MidCap Fund's investment advisory fee rate has been determined according to the following breakpoint schedule, which reduces the rate paid as the MidCap Fund's AUM increase:

| AUM | Fee Rate |
|---|---|
| Up to $500 million | 0.65% |
| From $500 million to $1 billion | 0.63% |
| From $1 billion to $1.5 billion | 0.61% |
| From $1.5 billion to $2 billion | 0.60% |
| From $2 billion to $3 billion | 0.59% |
| Over $3 billion | 0.58% |

The MidCap Fund paid Defendant an effective investment advisory fee rate of fifty-nine basis points, or 0.59%, during its most recently reported fiscal year ended October 31, 2014, pursuant to the above fee schedule.  The MidCap Fund paid Defendant approximately $48,621,000 in investment advisory fees during fiscal year 2014.

**ANSWER:**  Paragraph 27 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 27 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits the allegations in Paragraph 27, except denies the second to last sentence in

Paragraph 27 because Plaintiffs have not cited to any document or source that uses the term

"effective investment advisory fee rate."

28.    Since at least 2008, the MidCap Value III Fund's investment advisory fee rate has been determined according to the following breakpoint schedule, which reduces the rate paid as the MidCap Value III Fund's AUM increase:

| AUM | Fee Rate |
|---|---|
| Up to $500 million | 0.65% |
| From $500 million to $1 billion | 0.63% |
| From $1 billion to $1.5 billion | 0.61% |
| Over $1.5 billion | 0.60% |

The MidCap Value III Fund paid Defendant an effective investment advisory fee rate of sixty-four basis points, or 0.64%, during its most recently reported fiscal year ended October 31, 2014, pursuant to the above fee schedule.[10] The MidCap Value III Fund paid Defendant approximately $5,601,000 in investment advisory fees during fiscal year 2014.

**ANSWER:**  Paragraph 28 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 28

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits the allegations in Paragraph 28, except denies the second to last sentence in

Paragraph 28 because Plaintiffs have not cited to any document or source that uses the term

"effective investment advisory fee rate," and also denies the allegations in footnote 10.

---

[10] During fiscal 2014, Defendant was required by contract to limit the fee it charged the MidCap Value III Fund by 0.014%.  The fee waiver remains in effect until its expiration on February 29, 2016.

**DEFENDANT HAS DELEGATED RESPONSIBILITY FOR PROVIDING INVESTMENT ADVISORY SERVICES TO THE SUB-ADVISERS**

29.     Rather than Defendant providing the investment advisory services required by the Management Agreement, Defendant has subcontracted with other investment advisers to provide substantially all of those services to the Funds.  Specifically:

- Defendant subcontracts with Brown Investment Advisory Incorporated ("Brown") and T. Rowe Price Associates, Inc. ("T.  Rowe") (together, the "LargeCap Growth I Fund Sub-advisers") to provide investment advisory services to the LargeCap Growth I Fund.  Brown provides such services pursuant to the Sub-advisory Agreement between Defendant and Brown, dated September 14, 2010.  T. Rowe provides such services pursuant to the Amended and Restated Sub-advisory Agreement between Defendant and T. Rowe, dated April 1, 2012 (together, the "LargeCap Growth I Fund Sub-advisory Agreements").

- Defendant subcontracts with AllianceBernstein L.P. ("Alliance"), Columbus Circle Investors ("CCI"), Brown, and Emerald Advisors, Inc. ("Emerald") (collectively, the "SmallCap Growth I Fund Sub-advisers") to provide investment advisory services to the SmallCap Growth I Fund.  Alliance provides such services pursuant to the Amended and Restated Sub-advisory Agreement between Defendant and Alliance, dated January 1, 2010.  CCI provides such services pursuant to the Amended and Restated Sub-advisory Agreement between Defendant and CCI, dated January 1, 2010.  Brown provides such services pursuant to the Sub-advisory Agreement between Defendant and Brown, dated September 14, 2010.  Emerald provides such services pursuant to the Amended and Restated Sub-advisory Agreement between Defendant and Emerald, dated April 25, 2014 (collectively, the "SmallCap Growth I Fund Sub-advisory Agreements").

- Defendant subcontracts with Principal Global Investors, LLC ("PGI") to provide investment advisory services to the SmallCap Fund.  PGI provides such services pursuant to the Amended and Restated Sub-advisory Agreement between Defendant and PGI, dated September 22, 2015 (the "SmallCap Fund Sub-advisory Agreement").

- Defendant subcontracts with PGI to provide investment advisory services to the High Yield Fund.  PGI provides such services pursuant to the Amended and Restated Sub-advisory Agreement between Defendant and PGI, dated September 22, 2015 (the "High Yield Fund Sub-advisory Agreement").

- Defendant subcontracts with PGI to provide investment advisory services to the MidCap Fund.  PGI provides such services pursuant to the Amended and Restated Sub-advisory Agreement between Defendant and PGI, dated September 22, 2015 (the "MidCap Fund Sub-advisory Agreement").

- Defendant subcontracts with Barrow, Hanley, Mewhinney & Strauss, LLC ("Barrow") and PGI (together, the "MidCap Value III Fund Sub-advisers") to provide investment advisory services to the MidCap Value III Fund.  Barrow provides such

services pursuant to the Amended and Restated Sub-advisory Agreement between Defendant and Barrow, dated December 19, 2011.  PGI provides such services pursuant to the Amended and Restated Sub-advisory Agreement between Defendant and PGI, dated September 22, 2015 (together, the "MidCap Value III Fund Sub-advisory Agreements").

Brown, T. Rowe, Alliance, CCI, Emerald, PGI, and Barrow, are collectively referred to herein as the "Sub-advisers."[11] The LargeCap Growth I Fund Sub-advisory Agreements, SmallCap Growth I Fund Sub-advisory Agreements, SmallCap Fund Sub-advisory Agreement, High Yield Fund Sub-advisory Agreement, MidCap Fund Sub-advisory Agreement, and MidCap Value III Fund Sub-advisory Agreements are collectively referred to herein as the "Sub-advisory Agreements."

**ANSWER:**  Paragraph 29 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 29

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that, in connection with its role as advisor to the LargeCap Growth I Fund, PMC

subcontracts with Brown and T. Rowe to provide certain sub-advisory services, pursuant to sub-

advisory agreements with each of those entities.  PMC admits further that, in connection with its

role as advisor to the SmallCap Growth I Fund, PMC subcontracts with Alliance, Brown, CCI

and Emerald to provide certain sub-advisory services, pursuant to sub-advisory agreements with

each of those entities.  PMC also admits that, in connection with its role as advisor to the

SmallCap Fund, the High-Yield Fund, and the MidCap Fund, PMC subcontracts with PGI to

provide certain sub-advisory services to those three funds, pursuant to a sub-advisory agreement

with that entity.  PMC additionally admits that, in connection with its role as advisor to the

MidCap Value III Fund, PMC subcontracts with Barrow and PGI to provide certain sub-advisory

---

[11] PGI and CCI are collectively referred to herein as the "Affiliated Sub-advisers."  Brown, T. Rowe, Alliance, Emerald, and Barrow are collectively referred to herein as the "Unaffiliated Sub-advisers."

services, pursuant to sub-advisory agreements with each of those entities.  PMC denies the

remaining allegations in Paragraph 29.

30.      Pursuant to the Sub-advisory Agreements, Defendant pays a fee to the
Sub-advisers for providing substantially all investment advisory services to the Funds that
amounts to about 32% of what Defendant charges the Funds for the nearly identical services
required of Defendant under the Management Agreement, as shown by the following table:

| Investment Advisory Services Required by Management Agreement | Investment Advisory Services Required by Sub-advisory Agreements[12] |
| --- | --- |
| "**INVESTMENT ADVISORY SERVICES** The Manager will regularly perform the following services for each Series:" | "Obligations of and Services to be Provided by the Sub-Advisor The Sub-Advisor will:" |
| "(a) Provide investment research, advice and supervision"; | "(a) Provide investment advisory services, including but not limited to research, advice and supervision for each Series." |
| "(c) Furnish to the Board of Directors of the Fund (or any appropriate committee of such Board), and provide ongoing review, evaluation and revision from time to time as conditions require of, a recommended investment program for the portfolio of each Series of the Fund consistent with each Series' investment objective and policies, including any recommendation for any combination or liquidation of Series;" | "(b) Furnish to the Board of Directors of the Fund for approval (or any appropriate committee of such Board), and revise from time to time as conditions require, a recommended investment program for [the Fund] consistent with each Series investment objective and policies." |
| "(e) Implement such of its recommended investment program for each Series as the Fund shall approve, by placing orders for the purchase and sale of securities, subject always to the provisions of the Fund's Articles of Incorporation and Bylaws and the | "(c) Implement the approved investment program by placing orders for the purchase and sale of securities without prior consultation with the Manager and without regard to the length of time the securities have been held, the resulting rate of portfolio turnover or any |

[12] The quoted material in the column below is from the SmallCap Fund Sub-advisory Agreement/ High Yield Fund Sub-advisory Agreement/ MidCap Fund Sub-advisory Agreement, and is substantially the same in the other Sub-advisory Agreements.  Minor differences may exist from sub-advisory agreement to sub-advisory agreement.  Previous versions of the Sub-advisory Agreements in effect during the year leading up to the filing of this Complaint required Defendant to provide substantially the same services to the Funds (unless otherwise noted herein).  All versions of the management agreement in effect during the year leading up the filing of this Complaint are collectively referred to herein as the "Sub-advisory Agreements."

| Investment Advisory Services Required by Management Agreement | Investment Advisory Services Required by Sub-advisory Agreements[12] |
|---|---|
| requirements of the [ICA], and the Fund's Registration Statement, current Prospectus and Statement of Additional Information, as each of the same shall be from time to time in effect"; | tax considerations, subject always to the provisions of the Fund's registration statement, Articles of Incorporation and Bylaws and the requirements of the [ICA], as each of the same shall be from time to time in effect." |
| "(f) Advise and assist the officers of the Fund in taking such steps as are necessary or appropriate to carry out the decisions of its Board of Directors and any appropriate committees of such Board regarding the general conduct of the investment business of each Series; and" | "(d) Advise and assist the officers of the Fund, as requested by the officers, in taking such steps as are necessary or appropriate to carry out the decisions of its Board of Directors, and any appropriate committees of such Board, regarding the general conduct of the investment business of each Series." |
| "(g) Report to the Board of Directors of the Fund at such times and in such detail as the Board may deem appropriate in order to enable it to determine that the investment policies of each Series are being observed." | "(f) Report to the Board of Directors of the Fund at such times and in such detail as the Board of Directors may reasonably deem appropriate in order to enable it to determine that the investment policies, procedures and approved investment program of each Series are being observed." |

The remaining investment advisory services provided by Defendant are limited to supervision and oversight of the Sub-advisers.

**ANSWER:**  Paragraph 30 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 30 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC states that Plaintiffs' definition of Management Agreement in Footnote 6 includes agreements from multiple years that are not identically drafted and, in any event, each of those documents speaks for itself.  PMC denies the remaining allegations in Paragraph 30.

31.    Defendant paid the LargeCap Growth I Fund Sub-advisers investment sub-advisory fee rates for performing substantially all investment advisory services for the LargeCap Growth I Fund.  The LargeCap Growth I Fund Sub-advisers' fee rates include breakpoints which reduce the effective sub-advisory fee rate paid as the LargeCap Growth I Fund's AUM

increase.[13] Since at least September 14, 2010, Defendant has paid Brown an investment sub-advisory fee rate according to the following breakpoint schedule which reduces the fee as the average daily net assets allocated to Brown increases:

| AUM | Fee Rate |
|---|---|
| Up to $100 million | 0.30% |
| From $100 million to $200 million | 0.25% |
| Over $200 million | 0.20% |

Since at least April 1, 2012, Defendant paid T. Rowe an investment sub-advisory fee rate according to one of two breakpoint schedules, depending on whether AUM exceeded $1 billion.[14] When AUM was less than or equal to $1 billion, Defendant paid T. Rowe an investment sub-advisory fee rate according to the following breakpoint schedule:

| AUM | Fee Rate |
|---|---|
| Up to $250 million | 0.40% |
| From $250 million to $500 million | 0.375% |
| From $500 million to $1 billion | 0.35% |

When AUM exceeded $1 billion, Defendant paid T. Rowe an investment sub-advisory fee rate according to the following breakpoint schedule:

| AUM | Fee Rate |
|---|---|
| Up to $1 billion | 0.35% |
| Over $1 billion | 0.325% |

---

[13] Defendant's publicly available information does not provide effective sub-advisory fee rates for the Funds. Accordingly, throughout this Complaint, effective sub-advisory fee rates are calculating net fees paid to each of the Fund's Sub-adviser(s) for the given fiscal year as a percentage of that Fund's daily average AUM for that year.

[14] T. Rowe agreed to a voluntary sub-advisory fee waiver arrangement to the extent necessary to reduce the effective monthly sub-advisory fees by the following percentages based on the combined average daily net assets of the Principal Funds sub-advised by T. Rowe: assets up to $1 billion—2.5% fee reduction; assets between $1 billion and $2.5 billion—5% fee reduction; assets between $2.5 billion and $5 billion—7.5% fee reduction; assets over $5 billion—10% fee reduction.

Defendant paid the LargeCap Growth I Fund Sub-advisers an effective investment sub-advisory fee rate of approximately 0.219%, less than twenty-two basis points, during its most recently reported fiscal year ended October 31, 2014, pursuant to the above fee schedules.  In total, Defendant paid the LargeCap Growth I Fund Sub-advisers approximately $16,109,856 in investment sub-advisory fees for performing substantially all investment advisory services for the LargeCap Growth I Fund during fiscal year 2014.  Defendant only paid the LargeCap Growth I Fund Sub-advisers less than 40% of the fee it received from the LargeCap Growth I Fund.

**ANSWER:**  Paragraph 31 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 31

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the Sub-Advisory Agreement between PMC and Brown dated September 14,

2010 includes the breakpoint schedule contained in Paragraph 31 for the LargeCap Growth I

Fund.  PMC further admits that the Amended and Restated Sub-Advisory Agreement between

PMC and T. Rowe dated April 1, 2012 includes the breakpoint schedule contained in Paragraph

31 for the LargeCap Growth I Fund.  PMC also admits that, for the 2014 fiscal year, PMC paid

$16,109,856 in sub-adviser fees to the sub-advisers of the LargeCap Growth I Fund.  PMC

denies the remaining allegations in Paragraph 31.

32.     Defendant paid the SmallCap Growth I Fund Sub-advisers investment sub-advisory fee rates for performing substantially all investment advisory services for the SmallCap Growth I Fund.  The SmallCap Growth I Fund Sub-advisers' fee rates include breakpoints which reduce the effective sub-advisory fee rate paid as the SmallCap Growth I Fund's AUM increase.  Since at least January 1, 2010, Defendant has paid Alliance an investment sub-advisory fee rate according to the following breakpoint schedule:

| AUM | Fee Rate |
|---|---|
| Up to $25 million | 0.65% |
| From $25 million to $100 million | 0.60% |
| Over $100 million | 0.55% |

Since at least January 1, 2010, Defendant has paid CCI an investment sub-advisory fee of 0.50%, or fifty basis points, of the average daily net assets allocated to CCI.  Since at least September 14, 2010, Defendant has paid Brown an investment sub-advisory fee rate according to the following breakpoint schedule which reduces the fee as the average daily net assets allocated to Brown increases:

| AUM | Fee Rate |
| --- | --- |
| Up to $200 million | 0.50% |
| From $200 million to $400 million | 0.45% |
| Over $400 million | 0.40% |

Since at least April 25, 2014, Defendant has paid Emerald an investment sub-advisory fee rate according to the following breakpoint schedule, which reduces the rate paid as the SmallCap Growth I Fund's AUM increase:[15]

| AUM | Fee Rate |
| --- | --- |
| Up to $200 million | 0.50% |
| Over $200 million | 0.45% |

Defendant paid the SmallCap Growth I Fund Sub-advisers an effective investment sub-advisory fee rate of approximately 0.445%, less than forty-five basis points, during its most recently reported fiscal year ended October 31, 2014, pursuant to the above fee schedule.  In total, Defendant paid the SmallCap Growth I Fund Sub-advisers approximately $8,502,136 in investment sub-advisory fees for performing substantially all investment advisory services for the SmallCap Growth I Fund during fiscal year 2014.  Defendant only paid the SmallCap Growth I Fund Sub-advisers about 40% of the fee it received from the SmallCap Growth I Fund.

**ANSWER:**  Paragraph 32 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 32

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the Amended and Restated Sub-Advisory Agreement between PMC and

---

[15] Prior to the combination of the Small Cap Growth I Fund and Small Cap Growth II Fund, Defendant had paid Emerald an investment sub-advisory fee rate according to the same schedule breakpoint schedule since at least July 1, 2009.

Alliance dated January 1, 2010 includes the breakpoint schedule contained in Paragraph 32 for

the SmallCap Growth I Fund.  PMC further admits that the Amended and Restated Sub-Advisory

Agreement between PMC and CCI dated January 1, 2010 includes the breakpoint schedule

contained in Paragraph 32 for the SmallCap Growth I Fund.  PMC further admits that the Sub-

Advisory Agreement between PMC and Brown dated September 14, 2010 includes the

breakpoint schedule contained in Paragraph 32 for the SmallCap Growth I Fund.  PMC further

admits that the Amended and Restated Sub-Advisory Agreement between PMC and Emerald

dated April 25, 2014 includes the breakpoint schedule contained in Paragraph 32 for the

SmallCap Growth I Fund.  PMC further admits that, for the 2014 fiscal year, PMC paid

$8,502,136 in sub-adviser fees to the sub-advisers of the SmallCap Growth I Fund.  PMC denies

the remaining allegations in Paragraph 32.

33.    Since at least January 1, 2009, Defendant has paid PGI an investment
sub-advisory fee rate for performing substantially all investment advisory services for the
SmallCap Fund according to the following breakpoint schedule, which reduces the rate paid as
the SmallCap Fund's AUM increase:

| AUM | Fee Rate |
|---|---|
| Up to $25 million | 0.4699% |
| From $25 million to $100 million | 0.3524% |
| From $100 million to $200 million | 0.2643% |
| From $200 million to $500 million | 0.2448% |
| From $500 million to $1 billion | 0.2154% |
| From $1 billion to $1.5 billion | 0.1762% |
| Over $1.5 billion | 0.1175% |

Defendant paid PGI an effective investment sub-advisory fee rate of 0.2152%, less than
twenty-two basis points, during its most recently reported fiscal year ended October 31, 2014,
pursuant to the above fee schedule.  In total, Defendant paid PGI approximately $1,112,086 in

investment sub-advisory fees for performing substantially all investment advisory services for the SmallCap Fund during fiscal year 2014.  Defendant only paid PGI less than 30% of the fee it received from the SmallCap Fund.

**ANSWER:**  Paragraph 33 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 33

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the Amended and Restated Sub-Advisory Agreement between PMC and PGI

dated September 22, 2015 includes the breakpoint schedule contained in Paragraph 33 for the

SmallCap Fund.  PMC further admits that, for the 2014 fiscal year, PMC paid $1,112,086 in sub-

adviser fees to PGI for its role as sub-adviser to the SmallCap Fund.  PMC denies the remaining

allegations in Paragraph 33.

34.     Since at least April 2012, Defendant has paid PGI an investment sub-advisory fee rate of 0.2643%, less than twenty-seven basis points, for performing substantially all investment advisory services for the High Yield Fund.   In total, Defendant paid PGI approximately $10,799,507 in investment sub-advisory fees for performing substantially all investment advisory services for the High Yield Fund during fiscal year 2014.  Defendant only paid PGI about 50% of the fee it received from the High Yield Fund.

**ANSWER:**  Paragraph 34 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 34

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the Amended and Restated Sub-Advisory Agreement between PMC and PGI

dated September 22, 2015 includes an investment sub-advisory rate of 0.2643% for the High

Yield Fund.  PMC further admits that, for the 2014 fiscal year, PMC paid $10,799,507 in sub-

adviser fees to PGI for its role as sub-adviser to the High Yield Fund.  PMC denies the remaining

allegations in Paragraph 34.

35.     Since at least November 1, 2014, Defendant has paid PGI an investment sub-advisory fee rate for performing substantially all investment advisory services for the MidCap Fund according to the following breakpoint schedule, which reduces the rate paid as the MidCap Fund's AUM increase:

| AUM | Fee Rate |
|---|---|
| Up to $25 million | 0.4016% |
| From $25 million to $100 million | 0.3233% |
| From $100 million to $200 million | 0.2743% |
| From $200 million to $500 million | 0.2352% |
| From $500 million to $1 billion | 0.1862% |
| From $1 billion to $1.5 billion | 0.1373% |
| Over $1.5 billion | 0.0883% |

Defendant paid PGI an effective investment sub-advisory fee rate of 0.0923%, less than ten basis points, during its most recently reported fiscal year ended October 31, 2014, pursuant to the above fee schedule.  In total, Defendant paid PGI approximately $7,605,401 in investment sub-advisory fees for performing substantially all investment advisory services for the MidCap Fund during fiscal year 2014.  Defendant only paid PGI about 15% of the fee it received from the MidCap Fund.

**ANSWER:**  Paragraph 35 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 35 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that the Amended and Restated Sub-Advisory Agreement between PMC and PGI dated September 22, 2015 includes the breakpoint schedule contained in Paragraph 35 for the MidCap Fund.  PMC further admits that, for the 2014 fiscal year, PMC paid $7,605,401 in sub-adviser fees to PGI for its role as sub-adviser to the MidCap Fund.  PMC denies the remaining allegations in Paragraph 35.

36.     Defendant paid the MidCap Value III Fund Sub-advisers investment sub-advisory fee rates for performing substantially all investment advisory services for the MidCap Value III Fund.  The MidCap Value III Fund Sub-advisers' fee rates include breakpoints which reduce the effective sub-advisory fee rate paid as the MidCap Value III Fund's AUM increase.  Since at least December 19, 2011, Defendant has paid Barrow an investment sub-advisory fee rate according to the following breakpoint schedule which reduces the fee as the average daily net assets allocated to Barrow increases:

| AUM | Fee Rate |
| --- | --- |
| Up to $10 million | 0.80% |
| From $10 million to $25 million | 0.60% |
| From $25 million to $50 million | 0.50% |
| From $50 million to $100 million | 0.40% |
| Over $100 million | 0.35% |

Since at least December 31, 2009, Defendant has paid PGI an investment sub-advisory fee rate according to the following breakpoint schedule which reduces the fee as the average daily net assets allocated to PGI increases:

| AUM | Fee Rate |
| --- | --- |
| Up to $25 million | 0.3916% |
| From $25 million to $100 million | 0.3133% |
| From $100 million to $200 million | 0.2643% |
| From $200 million to $500 million | 0.2252% |
| From $500 million to $1 billion | 0.1762% |
| From $1 billion to $1.5 billion | 0.1273% |
| Over $1.5 billion | 0.0783% |

Defendant paid the MidCap Value III Fund Sub-advisers an effective investment sub-advisory fee rate of approximately 0.2106%, less than twenty-two basis points, during its most recently reported fiscal year ended October 31, 2014, pursuant to the above fee schedule.  In total, Defendant paid the MidCap Value III Fund Sub-advisers approximately $1,843,274 in investment sub-advisory fees for performing substantially all investment advisory services for

the MidCap Value III Fund during fiscal year 2014.  Defendant only paid the MidCap Value III Fund Sub-advisers about 35% of the fee it received from the MidCap Value III Fund.

**ANSWER:**  Paragraph 36 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 36

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the Amended and Restated Sub-Advisory Agreement between PMC and

Barrow, dated December 19, 2011, includes the breakpoint schedule contained in Paragraph 36

for the MidCap Value III Fund.  PMC further admits that the Amended and Restated Sub-

Advisory Agreement between PMC and PGI, dated September 22, 2015, includes the breakpoint

schedule contained in Paragraph 36 for the MidCap Value III Fund.  PMC further admits that, for

the 2014 fiscal year, PMC paid $1,843,274 in sub-adviser fees to the sub-advisers for the

MidCap Value III Fund.  PMC denies the remaining allegations in Paragraph 36.

37.     The fees paid by Defendant to each Sub-adviser pursuant to the Sub-advisory Agreements were established through arm's-length negotiations between Defendant and each Sub-adviser.  Although Defendant is affiliated with the Affiliated Sub-advisers, the parties' negotiations regarding the fees are effectively arms'-length given the sub-advisers' incentives to negotiate the highest possible fees.  Specifically, the Sub-advisers determine the compensation they provide to their respective decision-makers according to their financial results, which therefore incentivizes them to negotiate the best possible fee from Defendant.  The Sub-advisory Agreements are, therefore, indicative of the range of reasonable fees for the investment advisory services required under the Management Agreement for each Fund.  Not only did Defendant charge over three times (or about 312% of) the reasonable fee, i.e., what the Sub-advisers charged, for almost identical services, Defendant ultimately performed next to no investment advisory services for the Funds.  Yet, Defendant still retained far more in fees than it paid to the Sub-advisers.  Moreover, the fees paid by Defendant to each Sub-adviser include the cost to such Sub-adviser of providing the investment advisory services required by the applicable Sub-advisory Agreement plus a profit.  Given that Defendant performed almost no investment advisory services for the Funds, the fees retained by Defendant were mostly profit, thereby further evidencing the unreasonableness of the fees Defendant charged.

**ANSWER:**  Paragraph 37 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 37

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits the first sentence of Paragraph 37, and admits further that PMC is affiliated with the

Affiliated Sub-advisers.  PMC denies the remaining allegations in Paragraph 37.

### DEFENDANT CHARGES THE FUNDS A MARK-UP OVER THE FEES PAID TO THE SUB-ADVISERS THAT IS DISPROPORTIONATE TO THE VALUE OF DEFENDANT'S SUPERVISION AND OVERSIGHT SERVICES

38.    As established above, any investment advisory services provided to the Funds by Defendant are limited to supervision and oversight.  The costs of providing such services are *de minimis* on a fund-by-fund basis.[16]  Yet, the fees retained by Principal (after paying the Sub-advisers) represent a mark-up of approximately 212% over the sub-advisory fees paid by Defendant to the Sub-advisers.

**ANSWER:**  PMC denies the allegations in Paragraph 38.

39.    The approximately 212% mark-up charged by Defendant to each of the Funds is grossly disproportionate to the value of Defendant's supervision and oversight services, and outside the range of what could be negotiated at arm's length for such services.  The day-to-day implementation of an investment program is the most expensive, and important, investment advisory service required for a mutual fund.  This service is provided to the Funds by their respective Sub-advisers.  Defendant's primary responsibilities of supervising and overseeing the Sub-advisers are minimal in comparison.  Consequently, any mark-up charged by Defendant to the Funds over the fees paid to the Sub-advisers should be, at most, a small fraction of the fees paid to the Sub-advisers.  Defendant's fee retention (which amount to mostly profits), however, far ***exceed*** the fees charged by the Sub-advisers (which are offset by greater costs), despite the fact that Defendant performs minimal services for the Funds.

**ANSWER:**  Paragraph 39 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 39

contains multiple parts and subparts.

---

[16] Likewise, the costs of subcontracting with the Sub-advisers are de minimis on a fund-by-fund basis, especially given the length and continuity of many of the sub-advisory relationships.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC denies the allegations in Paragraph 39.

40.    The following table details Defendant's mark-up per Fund for fiscal 2014, the most recent reported fiscal year:

| Fund | Advisory Fees Charged by Defendant | Sub-advisory Fees Paid to Sub-adviser(s)[17] | Mark-Up Retained by Defendant | Mark-Up as a Percentage of Sub-advisory Fees |
|---|---|---|---|---|
| LargeCap Growth I Fund | $44,159,000 | $16,109,856 | $28,049,144 | 174.1% |
| | 60 basis points | 22 basis points | 38 basis points | |
| SmallCap Growth I Fund | $20,455,000 | $8,502,136 | $11,952,864 | 140.6% |
| | 107 basis points | 44.5 basis points | 61.5 basis points | |
| SmallCap Fund | $3,875,000 | $928,975 | $2,762914 | 248.4% |
| | 75 basis points | 21.5 basis point | 52.5 basis points | |
| High Yield Fund | $20,618,000 | $10,799,507 | $9,818,493 | 90.9% |
| | 51 basis points | 26.5 basis points | 24.5 basis points | |
| MidCap Fund | $49,621,000 | $7,605,401 | $41,015,599 | 539.3% |
| | 59 basis points | 9 basis points | 50 basis points | |
| MidCap Value III Fund | $5,601,000 | $1,843,274 | $3,757,726 | 203.9% |
| | 64 basis points | 21 basis points | 43 basis points | |
| Total | $143,329,000 | $45,972,260 | $97,356,740 | 211.8% |

---

[17] The effective sub-advisory fee rates included in this column are calculated as explained in fn. 13 above, then rounded to the nearest half basis point.

**ANSWER:**  Paragraph 40 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 40 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that the dollar amounts in the column titled "Advisory Fees Charged by Defendant" are contained in the Statement of Additional Information for fiscal year 2014, except that PMC denies that Plaintiffs correctly articulated the dollar amount for the MidCap Fund, and further denies that the total of the "Advisory Fees Charged by Defendant" is $143,329,000.  PMC further admits that the advisory fee rates in the column titled "Advisory Fees Charged by Defendant" are contained in each Fund's respective prospectus for 2014.  PMC further admits that the dollar amounts in the column titled "Sub-advisory Fees Paid to Sub-adviser" are contained in the Statement of Additional Information for fiscal year 2014, except with respect to the SmallCap Fund.  PMC denies the remaining allegations in Paragraph 40.

## THE FUNDS ARE RESPONSIBLE FOR SUBSTANTIALLY ALL COSTS ASSOCIATED WITH ADMINISTRATING THEIR CORPORATE AFFAIRS

41.     In addition to paying highly unreasonable investment advisory fees to Defendant, pursuant to the Management Agreement, the Funds must also assume substantially all of the administrative costs associated with operating the respective Fund.  As set forth below, the Management Agreement explicitly allocates to the Funds "all expenses attributable to the operation of the Fund or the services described in this Agreement and not specifically identified in this Agreement as being paid by [Defendant]."

**ANSWER:**  Paragraph 41 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 41 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that the Management Agreement states that "The Fund will pay, without reimbursement by the Manager, all expenses attributable to the operation of the Fund for the

services described in this Agreement and not specifically identified in this Agreement as being

paid by the Manager."  PMC denies the remaining allegations in Paragraph 41.

42.     The only expenses purportedly borne by Defendant pursuant to the Management
Agreement are:

(a)     the organizational expenses of the Fund and its Series and share classes,
including the Fund's registration under the [ICA], and the initial registration of its
Capital Stock for sale under the Securities Act with the SEC;

(b)     Compensation of personnel, officers and directors who are also affiliated
with the Manager;[18] and Expenses and compensation associated with furnishing
office space, and all necessary office facilities and equipment, and personnel
necessary to perform the general corporate functions of the Fund.

**ANSWER:**  PMC states that Plaintiffs' definition of Management Agreement in

Footnote 6 includes agreements from multiple years that are not identically drafted and, in any

event, each of those documents speaks for itself.  PMC denies the remaining allegations in

Paragraph 42.

43.     As set forth in the following table, during fiscal year 2014, the LargeCap Growth
I Fund paid more than $4.19 million; the SmallCap Growth I Fund paid more than $916,000; the
SmallCap Fund paid more than $2.23 million; the High Yield Fund paid more than
$15.47 million; the MidCap Fund paid more than $20.85 million; and the MidCap Value III
Fund paid more than $727,000 in additional administrative fees:[19]

| Administrative Fees | LargeCap Growth I Fund | SmallCap Growth I Fund | SmallCap Fund | High Yield Fund | Midcap Fund | Midcap Value III Fund |
|---|---|---|---|---|---|---|
| Distribution Fees | $898,000 | $220,000 | $1,285,000 | $9,935,000 | $10,197,000 | $342,000 |
| Administrative Service Fees | $238,000 | $43,000 | $20,000 | - | $337,000 | $13,000 |
| Registration Fees | $99,000 | $55,000 | $106,000 | $298,000 | $392,000 | $53,000 |
| Service Fees | $1,458,000 | $208,000 | $71,000 | | $1,560,000 | $79,000 |
| Shareholder Reports | $56,000 | $57,000 | $104,000 | $478,000 | $1,006,000 | $29,000 |
| Transfer Agent Fees | $1,218,000 | $182,000 | $603,000 | $4,599,000 | $7,107,000 | $144,000 |
| Custodian Fees | $26,000 | $70,000 | $6,000 | $16,000 | $10,000 | $20,000 |
| Directors' Expenses | $107,000 | $31,000 | $10,000 | $63,000 | $126,000 | $16,000 |
| Dividends and Interest on Securities Sold Short | – | – | – | – | – | – |
| Professional Fees | $39,000 | $37,000 | $22,000 | $38,000 | $39,000 | $27,000 |

[18] The Funds bear the cost of compensation of unaffiliated or independent directors.

[19] The figures included in the table are the fiscal year 2014 figures from the Statement of
Operations included in each of the Funds' respective Annual Reports for fiscal year 2014.

| Other Expenses | $54,000 | $13,000 | $5,000 | $46,000 | $82,000 | $4,000 |
|---|---|---|---|---|---|---|
| Total: | $4,193,000 | $916,000 | $2,232,000 | $15,473,000 | $20,856,000 | $727,000 |

The amounts set forth above are in addition to any amounts paid to Defendant under the Management Agreement.

**ANSWER:**  Paragraph 43 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 43 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that the values listed in the chart in Paragraph 43 are contained in the Funds' 2014 Annual Report, with the exception of the values in the "total" row.  PMC denies the remaining allegations in Paragraph 43.

## DEFENDANT DOES NOT PROVIDE ANY OTHER SERVICES TO THE FUNDS THAT JUSTIFIES THE MARK-UP IT CHARGES THE FUNDS

44.     The Management Agreement provides that Defendant perform the following administrative services for each of the Funds:

(a)      furnish the services of such of the Manager's officers and employees as may be elected officers or directors of the Fund, subject to their individual consent to serve and to any limitations imposed by law;

(b)      furnish office space, and all necessary office facilities and equipment, for the general corporate functions of the Fund (i.e., functions *other than* (i) underwriting and distribution of [Fund shares]; (ii) custody of [Fund assets]; (iii) transfer and paying agency services; and (iv) corporate and portfolio accounting services);

(c)      furnish the services of executive and clerical personnel necessary to perform the general corporate functions of the Fund;

(d)      design, develop, implement and regularly monitor appropriate compliance processes; and

(e)      prepare, or provide oversight and review of the preparation of, registration statements, shareholder reports and other disclosure materials and regulatory filings for each Series.[20]

**ANSWER:**  PMC states that Plaintiffs' definition of Management Agreement in

Footnote 6 includes agreements from multiple years that are not identically drafted and, in any

event, each of those documents speaks for itself.  PMC denies the allegations in Paragraph 44 to

the extent they purport to characterize or summarize the content of the documents referenced in

this paragraph.

45.      However, these "services" are explicitly not included under the fees paid by the Funds pursuant to the Management Agreement.  Rather, these costs are borne by Defendant as mentioned above.  Regardless, the expenses related to the Funds' organization, directors, other employees, office space, facilities, and equipment purportedly paid by Defendant pursuant to the Management Agreement are *de minimis* and do not justify the mark-up charged by Defendant to the Funds.

**ANSWER:**  PMC denies the allegations in Paragraph 45 and refers Plaintiffs to the

agreements comprising Plaintiffs' definition of Management Agreement, which speak for

themselves.

46.      To start, only two directors on the Board, which is comprised of a total of eleven directors, are affiliated, i.e., interested directors.  The two interested directors are the same for each of the Funds as well as for the other seventy-eight Principal Funds.  The interested directors are also employed by Defendant and devote a majority of their time to their responsibilities as employees of Defendant and its affiliates, and not to their responsibilities as directors of the Funds.  Therefore, any portion of the annual compensation paid by Defendant to the Funds' directors that is fairly allocable to their service as officers of the Funds (as opposed to their responsibilities as employees of Defendant and their responsibilities as directors or trustees of the seventy-eight other Principal Funds) is (or at least should be) *de minimis* relative to the markup charged to the Funds by Defendant over the sub-advisory fees paid by Defendant to the Sub-advisers.  *See infra* ¶¶49-51 (detailing the mark-up charged by Defendant to the Funds).

---

[20] Items (d) and (e) were not included in previous versions of the Management Agreement in effect at times during the most recently reported fiscal year, 2014.

**ANSWER:**  Paragraph 46 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 46 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that the Board is comprised of eleven directors.  Additionally, Paragraph 46 purports to incorporate the allegations in Paragraphs 49-51, and PMC accordingly repeats and incorporates its responses to those paragraphs as if fully set forth herein.  PMC denies the remaining allegations in Paragraph 46.

47.     The other employees of the Funds are employees for most, if not all, of the Principal Funds, including the Funds.  Therefore, any portion of the annual compensation paid by Defendant to the Funds' other employees that is fairly allocable to their service as employees of each of the Funds (as opposed to their responsibilities as employees of Defendant and their responsibilities as employees of the other Principal Funds) is *de minimis* relative to the mark-up charged to the Funds by Defendant over the sub-advisory fees paid by Defendant to the Sub-advisers.

**ANSWER:**  Paragraph 47 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 47 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that it has many employees who provide services to each of the Principal Funds, including the six Funds at issue in this lawsuit.  PMC denies the remaining allegations in Paragraph 47.

48.     Defendant uses the same office space office, facilities, and equipment to perform the general corporate functions the Funds and the seventy-eight other Principal Funds.  Insofar as the Funds make use of Defendant's offices, facilities, and equipment, any portion of Defendant's annual rent or facility/equipment costs that is fairly allocable to the Funds' use of those offices (as opposed to the use of those offices by Defendant, its affiliates, or the other Principal Funds) is (or at least should be) *de minimis* relative to the mark-up charged to the Funds by Defendant over the sub-advisory fees paid by Defendant to the Sub-advisers.

**ANSWER:**  Paragraph 48 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 48

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC denies the allegations in Paragraph 48.

49.    Defendant delegates to the Sub-advisers most of the work necessary to provide the remaining administrative services required of Defendant pursuant to the Management Agreement, including its responsibilities to:  "(d) design, develop, implement and regularly monitor appropriate compliance processes; and (e) prepare, or provide oversight and review of the preparation of, registration statements, shareholder reports and other disclosure materials and regulatory filings for each Series."  Specifically, Defendant delegates to the Sub-advisers the following administrative services pursuant to the Sub-advisory Agreements:[21]

(e)    Maintain, in connection with the Sub-Advisor's investment advisory services obligations, compliance with the 1940 Act and the regulations adopted by the Securities and Exchange Commission thereunder and the Series' investment strategies and restrictions as stated in the Fund's prospectus and statement of additional information.

(f)    Report to the Board of Directors of the Fund at such times and in such detail as the Board of Directors may reasonably deem appropriate in order to enable it to determine that the investment policies, procedures and approved investment program of each Series are being observed.

(g)    Upon request, provide assistance and recommendations for the determination of the fair value of certain securities when reliable market quotations are not readily available for purposes of calculating net asset value in accordance with procedures and methods established by the Fund's Board of Directors.

---

[21] The quoted material is from the SmallCap Fund Sub-advisory Agreement/ High Yield Fund Sub-advisory Agreement/ MidCap Fund Sub-advisory Agreement, and is substantially the same in the other Sub-advisory Agreements.  Minor differences may exist from sub-advisory agreement to sub-advisory agreement.

* * *

(j)      Maintain all accounts, books and records with respect to each Series as are required of an investment advisor of a Revenue Code of 1986, as amended (the "Code"), the 1940 Act, the Investment Advisers Act, the Securities Act of 1933, as amended (the "Securities Act"), and any state securities laws, and any rule or regulation thereunder, and furnish the Fund and the Manager with such periodic and special reports as the Fund or Manager may reasonably request.  In compliance with the requirements of Rule 31a-3 under the 1940 Act, the Sub-Advisor hereby agrees that all records that it maintains for each Series are the property of the Fund, agrees to preserve for the periods described by Rule 31a-2 under the 1940 Act any records that it maintains for the Series and that are required to be maintained by Rule 31a-1 under the 1940 Act, and further agrees to surrender promptly to the Fund any records that it maintains for a Series upon request by the Fund or the Manager.  The Sub-Advisor has no responsibility for the maintenance of Fund records except insofar as is directly related to the services the Sub-Advisor provides to a Series.

(k)      Observe and comply with Rule 17j-1 under the 1940 Act and the Sub-Advisor's Code of Ethics adopted pursuant to that Rule as the same may be amended from time to time.  The Manager acknowledges receipt of a copy of Sub-Advisor's current Code of Ethics.  Sub-Advisor shall promptly forward to the Manager a copy of any material amendment to the Sub-Advisor's Code of Ethics along with certification that the Sub-Advisor has implemented procedures for administering the Sub-Advisor's Code of Ethics

(l)      From time to time as the Manager or the Fund may request, furnish the requesting party reports on portfolio transactions and reports on investments held by a Series, all in such detail as the Manager or the Fund may reasonably request. The Sub-Advisor will make available its officers and employees to meet with the Fund's Board of Directors at the Fund's principal place of business on due notice to review the investments of a Series.

(m)      Provide such information as is customarily provided by a sub-advisor and may be required for the Fund or the Manager to comply with their respective obligations under applicable laws, including, without limitation, the Internal Revenue Code of 1986, as amended (the "Code"), the 1940 Act, the Investment Advisers Act, the Securities Act of 1933, as amended (the "Securities Act"), and any state securities laws, and any rule or regulation thereunder.

**ANSWER:** Paragraph 49 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 49

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC states that Plaintiffs' definition of Management Agreement in Footnote 6 includes agreements from multiple years that are not identically drafted and, in any event, each document speaks for itself.  PMC further states that the Sub-Advisory Agreement speak for itself.  PMC affirmatively states subparagraph (j) has not been correctly quoted.  PMC denies the remaining allegations in Paragraph 49.

50.     Defendant's excessive fee arrangements under the Management Agreement do not even encompass a number of other services, such as voting proxies, responding to tender offers and other corporate action requests, communicating with security holders about the Funds, maintaining records of each security holder's ownership of Fund securities, and managing the process by which Fund securities are purchased by or redeemed from security holders.  Rather, the Funds are forced to enter into separate agreements to attain certain of these services with third-parties or Defendant.  For example, the Funds pay Defendant to purportedly provide services for the R-1, R-2, R-3, R-4, and R-5 classes of shares (the "Plan Classes") for certain of the Funds, pursuant to an Amended and Restated Administrative Services Agreement and an Amended and Restated Service Agreement, both dated May 1, 2010, between Principal Funds, Inc. and Defendant (the "Administrative Agreements").  The Funds pay Defendant between 0.26% and 0.53% of the Plan Classes' average daily net assets pursuant to the Administrative Agreements.  The administrative fees that the Funds pay Defendant pursuant to the Administrative Agreements are separate from and additional to the investment advisory fees that the Funds pay Defendant pursuant to the Management Agreement.  Certain of the Sub-advisers also provide these additional administrative services to certain of the Funds pursuant to the respective Sub-advisory Agreements.  For example, certain Sub-advisers:[22]

> (n)     Vote proxies received on behalf of the Series in a manner consistent with Sub-Advisor's proxy voting policies and procedures and provide a record of votes cast containing all of the voting information required by Form N-PX in an electronic format to enable the Series to file Form N-PX as required by SEC rule.

> (o)     Respond to tender offers, rights offerings and other voluntary corporate action requests affecting securities held by the Fund.

---

[22] The quoted material is from the SmallCap Fund Sub-advisory Agreement/ High Yield Fund Sub-advisory Agreement/ MidCap Fund Sub-advisory Agreement, but such services as well as other services are required by certain other Sub-advisory Agreements.

**ANSWER:**  Paragraph 50 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 50 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits Principal Funds, Inc. and PMC are parties to an Amended and Restated Administrative Services Agreement and an Amended and Restated Service Agreement, both dated May 1, 2010.  PMC states that the referenced agreements speak for themselves.  PMC denies the remaining allegations in Paragraph 50.

51.     In fact, far more extensive administrative services than those provided by Defendant under the Management Agreement can be obtained from unaffiliated service providers through arm's-length negotiations for less than five basis points, or 0.05% of AUM, according to publicly disclosed administrative services agreements for other mutual funds. Accordingly, the mark-up charged to each Fund by Defendant is disproportionate to any administrative services, purportedly provided by Defendant pursuant to the Management Agreement, and outside the range of what could be negotiated at arm's length for such services.

**ANSWER:**  PMC denies the allegations in Paragraph 51.

52.     In addition, the Management Agreement requires Defendant to provide the following accounting services for each of the Funds:

(a)     Maintain fund general ledger and journal;

(b)     Prepare and record disbursements for direct expenses of each Series;

(c)     Prepare daily money transfer;

(d)     Reconcile all bank and custodian accounts of each Series;

(e)     Assist Fund independent auditors as appropriate;

(f)     Prepare daily projection of available cash balances;

(g)     Record trading activity for purposes of determining net asset values and daily dividend;

(h)     Prepare daily portfolio valuation report to value portfolio securities and determine daily accrued income;

(i)      Determine the net asset value per share of each Series daily or at such other intervals as the Fund may reasonably request or as may be required by law;

(j)      Prepare monthly, quarterly, semi-annual and annual financial statements;

(k)      Provide financial information for reports to the [SEC] in compliance with the provisions of the [ICA] and the [Securities Act], the Internal Revenue Service and any other regulatory or governmental agencies as required;

(l)      Provide financial, yield, net asset value, and similar information to National Association of Securities Dealers, Inc., and other survey and statistical agencies as instructed from time to time by the Fund;

(m)      Investigate, assist in the selection of and conduct relations with custodians, depositories, accountants, legal counsel, insurers, banks and persons in any other capacity deemed to be necessary or desirable for the operations of each Series; and

(n)      Obtain and keep in effect fidelity bonds and directors and officers/errors and omissions insurance policies for the Fund in accordance with the requirements of the [ICA] and the rules thereunder, as such bonds and policies are approved by the Fund's Board of Directors."

**ANSWER:**  Paragraph 52 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 52

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC states that Plaintiffs' definition of Management Agreement in Footnote 6 includes

agreements from multiple years that are not identically drafted and, in any event, each of those

documents speaks for itself.  PMC denies the remaining allegations in Paragraph 52.

53.      Defendant delegates a substantial portion of this work to the Sub-advisers via the administrative services required of the Sub-advisors pursuant to the Sub-advisory Agreements as detailed *supra*, in ¶ 52 and exemplified in the following chart:

| Accounting Services Required by the Management Agreement | Services Required by Sub-advisory Agreements[23] |
| --- | --- |

---

[23] The quoted material in the column below is from the SmallCap Fund Sub-advisory Agreement/ High Yield Fund Sub-advisory Agreement/ MidCap Fund Sub-advisory Agreement, and is

| Accounting Services Required by the Management Agreement | Services Required by Sub-advisory Agreements[23] |
|---|---|
| "(i) Determine the net asset value per share of each Series daily or at such other intervals as the Fund may reasonably request or as may be required by law;" | "(j) Maintain all accounts, books and records with respect to each Series as are required of an investment advisor of a registered investment company.."  pursuant to applicable law." |
| "(j) Prepare monthly, quarterly, semi-annual and annual financial statements;" | |
| "(k) Provide financial information for reports to the [SEC] in compliance with the provisions of the [ICA] and the [Securities Act], the Internal Revenue Service and any other regulatory or governmental agencies as required;" | |
| "(l) Provide financial, yield, net asset value, and similar information to National Association of Securities Dealers, Inc., and other survey and statistical agencies as instructed from time to time by the Fund;" | |

**ANSWER:**  Paragraph 53 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 53 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC states Plaintiffs' definition of Management Agreement in Footnote 6 includes agreements from multiple years that are not identically drafted and, in any event, each of those documents speaks for itself.  PMC further states that the Sub-Advisory Agreement speaks for itself.  PMC denies the remaining allegations in Paragraph 53.

---

substantially the same in the other Sub-advisory Agreements.  Minor differences may exist from sub-advisory agreement to sub-advisory agreement.

54.     Moreover, far more extensive accounting services than those provided by Defendant under the Management Agreement can be obtained from unaffiliated service providers through arm's-length negotiations for a small fraction than the mark-up charged by Defendant.  Accordingly, the mark-up charged to each Fund by Defendant is disproportionate to any accounting services, purportedly provided by Defendant pursuant to the Management Agreement, and outside the range of what could be negotiated at arm's length for such services.

**ANSWER:**  PMC denies the allegations in Paragraph 54.

## DEFENDANT FAILED TO SHARE WITH THE FUNDS SAVINGS REALIZED FROM ECONOMIES OF SCALE

55.     The Funds' assets have increased considerably in recent years.  As a result of the increase in AUM, the amount of investment advisory fees charged to the Funds have also increased considerably.  Specifically:

- The LargeCap Growth I Fund's average daily AUM have increased from approximately $1.33 billion in fiscal year 2009, to approximately $7.36 billion in fiscal year 2014.  As a result of the increase in AUM, the amount of investment advisory fees charged to the LargeCap Growth I Fund increased by more than 353%, from approximately $9,741,000 in fiscal year 2009 to approximately $44,159,000 in fiscal year 2014.

- The SmallCap Growth I Fund's average daily AUM have increased from approximately $141 million in fiscal year 2009, to approximately $1.9 billion in fiscal year 2104.  As a result of the increase in AUM, the amount of investment advisory fees charged to the SmallCap Growth I Fund increased by more than 1,216%, from approximately $1,554,000 in fiscal year 2009 to approximately $20,455,000 in fiscal year 2014.

- The SmallCap Fund's average daily AUM have increased from approximately $167 million in fiscal year 2009, to approximately $517 billion in fiscal year 2014.  As a result of the increase in AUM, the amount of investment advisory fees charged to the SmallCap Fund increased by more than 208%, from approximately $1,255,000 in fiscal year 2009 to approximately $3,875,000 in fiscal year 2014.

- The High Yield Fund's average daily AUM have increased from approximately $2.1 billion in fiscal year 2009, to approximately $4 billion in fiscal year 2014.  As a result of the increase in AUM, the amount of investment advisory fees charged to the High Yield Fund increased by more than 91%, from approximately $10,752,000 in fiscal year 2009 to approximately $20,618,000 in fiscal year 2014.

- The MidCap Fund's average daily AUM have increased from approximately $589 million in fiscal year 2009, to approximately $8.2 billion in fiscal year 2014.  As a result of the increase in AUM, the amount of investment advisory fees charged to the MidCap Fund increased by more than 1,170%, from approximately $3,827,000 in fiscal year 2009 to approximately $48,621,000 in fiscal year 2014.

- The MidCap Value III Fund's average daily AUM have increased from approximately $75 million in fiscal year 2009, to approximately $875 million in fiscal year 2014. As a result of the increase in AUM, the amount of investment advisory fees charged to the MidCap Value III Fund increased by more than 1,050%, from approximately $487,000 in fiscal year 2009 to approximately $5,601,000 in fiscal year 2014.

**ANSWER:** Paragraph 55 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct." (emphasis added). Paragraph 55 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that the LargeCap Growth I Fund paid $9,741,000 in management fees in fiscal year 2009 and $44,159,000 in management fees in fiscal year 2014; that the SmallCap Growth I Fund paid $20,455,000 in management fees in fiscal year 2014 (but denies that the SmallCap Growth I Fund paid $1,554,000 in management fees in fiscal year 2009); that the SmallCap Fund paid $1,255,000 in management fees in fiscal year 2009 and $3,875,000 in management fees in fiscal year 2014; that the High Yield Fund paid $10,752,000 in management fees in fiscal year 2009 and $20,618,000 in management fees in fiscal year 2014; that the MidCap Fund paid $3,827,000 in management fees in fiscal year 2009 and $48,621,000 in management fees in fiscal year 2014; and that the MidCap Value III Fund paid $487,000 in management fees in fiscal year 2009 and $5,601,000 in management fees in fiscal year 2014. PMC denies the remaining allegations in Paragraph 55, and points out that Plaintiffs have not cited to any document or source identifying where they obtained the "average daily AUM" values referenced in this paragraph.

56. Consequently, Defendant realized economies of scale as the Funds' AUM increased, which reduced the cost, as a percentage of the Funds' AUM, of providing services to each Fund, and increased the profitability to Defendant of providing those services. Yet, the increase in investment advisory fees charged to each Fund by Defendant has not been accompanied by a proportionate increase in the work or cost required by Defendant to provide services to the Funds pursuant to the Management Agreement.

**ANSWER:**  The allegations in Paragraph 56 are legal conclusions that do not require an admission or denial, but to the extent that they do, PMC denies each and every allegation in this paragraph.

57.     With respect to investment advisory services, Defendant has continued to subcontract with the Sub-advisers to provide investment advisory services for each Fund. Defendant's supervision and oversight of the Sub-advisers has also not meaningfully increased as the Funds' AUM has increased.  Defendant has continued to request and evaluate the same or substantially the same reports and other information with respect to each Sub-adviser as the Funds' AUM have increased, and the work or cost to Defendant of reviewing and evaluating that information has not increased proportionately with AUM.  Likewise, Defendant is required to monitor compliance with the same or substantially the same regulatory requirements regardless of a fund's AUM, and the work or cost required to monitor such compliance with respect to the Funds has not increased proportionately as the Funds' AUM have increased.[24]

**ANSWER:**  Paragraph 57 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 57

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that it subcontracts with certain sub-advisors to provide certain investment advisory

services for the Funds.  PMC denies the remaining allegations in Paragraph 57.

58.     Nor has the work or cost to Defendant of providing the minimal accounting services purportedly provided pursuant to the Management Agreement meaningfully increased as the Funds' AUM have increased.  Similarly, the minimal administrative costs covered by Defendant pursuant to the Management Agreement have not meaningfully increased as the Funds' AUM have increased.  Defendant provides the same or substantially the same employees, office space, facilities, and equipment regardless of a fund's AUM, and the cost of providing employees, office space, facilities, and equipment with respect to the Funds has not increased proportionately as the Funds' AUM increased.

**ANSWER:**  Paragraph 58 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 58

contains multiple parts and subparts.

---

[24] Moreover, Defendant delegates its compliance responsibilities to the Sub-advisers under the Sub-advisory Agreements.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC denies the allegations in Paragraph 58.

59.     Because investment advisers realize economies of scale as a mutual fund's AUM increase, the investment advisory fee rate charged to a mutual fund often decreases as the fund's AUM increase.  Mutual fund investment advisory fee schedules often include breakpoints, which reduce a fund's fee rate as AUM increase.  Absent breakpoints or other reductions to the fee rate, or if the breakpoints or other reductions do not appropriately reduce the effective fee rate paid by a fund, the benefits of economies of scale accrue to a fund's investment adviser in the form of higher fees and profits.

**ANSWER:**  Paragraph 59 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 59

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits the second sentence in Paragraph 59.  The remaining allegations in Paragraph 59

are legal conclusions that do not require an admission or denial, but to the extent that they do,

PMC denies each and every one of those allegations.

60.     To start, Defendant did not appropriately share with the LargeCap Growth I Fund the benefits of economies of scale it realized in supervising and overseeing the LargeCap Growth I Fund Sub-advisers.  Although the LargeCap Growth I Fund's investment advisory fee schedule includes breakpoints (*see supra* ¶23), the breakpoints fail to provide the LargeCap Growth I Fund with an appropriate share of the benefits of economies of scale realized by Defendant.  Significantly, the LargeCap Growth I Fund's investment advisory fee schedule has been in effect since at least 2010, and includes a highest breakpoint set at only $3 billion in AUM, even though ***AUM has blown past that breakpoint approaching $8 billion*** by the end of fiscal year 2014.

**ANSWER:**  Paragraph 60 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 60

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the LargeCap Growth I Fund's management fee schedule includes breakpoints,

the highest of which is set at $3 billion.  To the extent Paragraph 60 purports to incorporate the

allegations in Paragraph 23, PMC repeats and incorporates its responses to that paragraph as if

fully set forth herein.  PMC denies the remaining allegations in Paragraph 60.

61.    The LargeCap Growth I Fund's average daily AUM increased more than
$1.5 billion from approximately $5.79 billion in fiscal year 2013 to approximately $7.36 billion
in fiscal year 2014.  At the same time, the LargeCap Growth I Fund's effective investment
advisory rate decreased by only one basis point, from 0.61% to 0.60%.  The one basis point
reduction in the LargeCap Growth I Fund's effective investment advisory fee rate from 2013 to
2014 translates into no meaningful savings to the fund.

**ANSWER:**  Paragraph 61 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 61

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC denies the allegations in Paragraph 61, and points out that Plaintiffs have not cited to any

document or source (i) identifying where they obtained the "average daily AUM" values

referenced in those allegations or (ii) that uses the term "effective investment advisory fee rate."

62.    In contrast, due to the increase in the LargeCap Growth I Fund's AUM from 2013
to 2014, the dollar amount of fees paid by the LargeCap Growth I Fund increased by
approximately $8,842,000 from $35,317,000 in fiscal year 2013 to $44,159,000 in fiscal year
2014.  Moreover, since the sub-advisory fee schedule that the LargeCap Growth I Fund Sub-
advisers charged Defendant for providing substantially all investment advisory services to the
LargeCap Growth I Fund remained constant from 2013 to 2014, Defendant was able to maintain
the same fee retention rate.  Thus, the increase in the LargeCap Growth I Fund's AUM from
2013 to 2014 produced significant benefits to Defendant (increased advisory fees) but no
meaningful benefits to the LargeCap Growth I Fund (minimal reduction in the advisory fee rate).

**ANSWER:**  Paragraph 62 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 62

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the management fees paid by the LargeCap Growth I Fund were $35,317,000

in fiscal year 2013 and $44,159,000 in fiscal year 2014, as reflected in the Funds' Statement of

Additional Information, dated March 1, 2015 (as amended and restated August 24, 2015).  PMC

denies the remaining allegations in Paragraph 62.

63.     Defendant also did not appropriately share with the SmallCap Growth I Fund the benefits of economies of scale it realized in supervising and overseeing the SmallCap Growth I Fund Sub-advisers.  Although the SmallCap Growth I Fund's investment advisory fee schedule includes breakpoints (*see supra* ¶24), the breakpoints fail to provide the SmallCap Growth I Fund with an appropriate share of the benefits of economies of scale realized by Defendant. Most recently, the SmallCap Growth I Fund's average daily AUM increased more than $270 million from approximately $1.63 billion in fiscal year 2013 to approximately $1.91 billion in fiscal year 2014.  At the same time, the SmallCap Growth I Fund's effective investment advisory rate decreased by only one basis point, from 1.08% to 1.07%.  The one basis point reduction in the SmallCap Growth I Fund's effective investment advisory fee rate from 2013 to 2014 translates into no meaningful savings to the fund.

**ANSWER:**  Paragraph 63 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 63

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the SmallCap Growth I Fund's management fee schedule includes breakpoints.

To the extent Paragraph 63 purports to incorporate the allegations in Paragraph 24, PMC repeats

and incorporates its responses to that paragraph as if fully set forth herein.  PMC denies the

remaining allegations in Paragraph 63, and points out that Plaintiffs have not cited to any

document or source (i) identifying where they obtained the "average daily AUM" values

referenced in those allegations or (ii) that uses the term "effective investment advisory fee rate."

64.     In contrast, due to the increase in AUM from 2013 to 2014, the dollar amount of fees paid by the SmallCap Growth I Fund increased by approximately $2,842,000 from $17,613,000 in fiscal year 2013 to $20,455,000 in fiscal year 2014.  Moreover, because the sub-advisory fee rates for the SmallCap Growth I Fund also remained constant from 2013 to 2014, Defendant's fee retention rate remained the same.  Thus, the increase in the SmallCap Growth I Fund's AUM from 2013 to 2014 produced significant benefits to Defendant (increased advisory fees) but no meaningful benefits to the SmallCap Growth I Fund (minimal reduction in the advisory fee rate).

**ANSWER:**  Paragraph 64 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 64 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that the management fees paid by the SmallCap Growth I Fund were $17,613,000 in fiscal year 2013 and $20,455,000 in fiscal year 2014, as reflected in the Funds' Statement of Additional Information, dated March 1, 2015 (as amended and restated August 24, 2015).  PMC further admits that the sub-advisory fee rates charged by the sub-advisers for the SmallCap Growth I Fund did not change from 2013 to 2014.  PMC denies the remaining allegations in Paragraph 64.

65.     Defendant did not share with the SmallCap Fund any of the benefits of economies of scale it realized in supervising and overseeing PGI.  The SmallCap Fund's average daily AUM increased more than $100 million from approximately $412,266,667 in fiscal year 2013 to approximately $516,666,667 in fiscal year 2014.  At the same time, the SmallCap Fund's effective investment advisory rate remained the same.  The lack of reduction in the SmallCap Fund's effective investment advisory fee rate from 2013 to 2014 translates into no savings to the fund.

**ANSWER:**  Paragraph 65 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 65 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC denies the allegations in Paragraph 65, and points out that Plaintiffs have not cited to any document or source (i) identifying where they obtained the "average daily AUM" values referenced in those allegations or (ii) that uses the term "effective investment advisory fee rate."

66.     In contrast, due to the increase in AUM from 2013 to 2014, the dollar amount of fees paid by the SmallCap Fund increased by approximately $783,000 from $3,092,000 in fiscal year 2013 to $3,875,000 in fiscal year 2014.  Moreover, because the sub-advisory fee rates for the SmallCap Fund also remained constant from 2013 to 2014, Defendant's fee retention rate remained the same.  Thus, the increase in the SmallCap Fund's AUM from 2013 to 2014

produced significant benefits to Defendant (increased advisory fees) but no benefits to the SmallCap Fund (no reduction in the advisory fee rate).  To the extent the SmallCap Fund achieved marginal economies of scale, they were shared by its sub-adviser.  In fact, the sub-advisory fee schedule for the SmallCap Fund includes more breakpoints and a larger reduction in fee rate from the lowest to highest breakpoint than Defendant's investment advisory fee schedule.

**ANSWER:**  Paragraph 66 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 66 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that the management fees paid by the SmallCap Fund were $3,092,000 in fiscal year 2013 and $3,875,000 in fiscal year 2014, as reflected in the Funds' Funds' Statement of Additional Information, dated March 1, 2015 (as amended and restated August 24, 2015).  PMC denies the remaining allegations in Paragraph 66, and points out that Plaintiffs have not cited to any document or source (i) identifying where they obtained the "average daily AUM" values referenced in those allegations, or (ii) that uses the term "advisory fee rate."

67.     Defendant did not share with the High Yield Fund any of the benefits of economies of scale it realized in supervising and overseeing PGI.  Significantly, the High Yield Fund's investment advisory fee schedule has been in effect since at least 2009 and includes a highest breakpoint set at only $250 million, even though *AUM has blown past that breakpoint exceeding $4 billion in fiscal year 2014*.  From fiscal year 2013 to fiscal year 2014, alone, the High Yield Fund's average daily AUM increased by close to $200 million from approximately $3.85 billion to $4.04 billion.  At the same time, the High Yield Fund's effective investment advisory fee rate did not decrease.  The lack of reduction in the High Yield Fund's effective investment advisory fee rate from 2013 to 2014 translates into no savings to the fund.

**ANSWER:**  Paragraph 67 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 67 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that, for each year since fiscal year 2009, the High Yield Fund's highest breakpoint

has been set at $250 million.  PMC denies the remaining allegations contained in Paragraph 67,

and points out that Plaintiffs have not cited to any document or source (i) identifying where they

obtained the "average daily AUM" values referenced in those allegations or (ii) that uses the

term "effective investment advisory fee rate."

68.     In contrast, the dollar amount of fees paid by the High Yield Fund increased by
approximately $987,000 from $19,631,000 in fiscal year 2013 to $20,618,000 in fiscal year
2014.  Moreover, since the sub-advisory fee rate for the High Yield Fund also remained constant
from 2013 to 2014, Defendant's fee retention rate remained the same.  Thus, the increase in the
High Yield's AUM from 2013 to 2014 produced significant benefits to Defendant (increased
advisory fees) but no benefits to the High Yield Fund (no reduction in the advisory fee rate).

**ANSWER:**  Paragraph 68 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 68

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the management fees paid by the High Yield Fund were $19,631,000 in fiscal

year 2013 and $20,618,000 in fiscal year 2014, as reflected in the Funds' Statement of

Additional Information, dated March 1, 2015 (as amended and restated August 24, 2015).  PMC

denies the remaining allegations in Paragraph 68.  PMC also points out that Plaintiffs have not

cited to any document or source that uses the term "subadvisory fee rate."

69.     Defendant did not appropriately share with the MidCap Fund the benefits of
economies of scale it realized in supervising and overseeing the PGI or covering limited
expenses for the fund.  Although the MidCap Fund's investment advisory fee schedule includes
breakpoints (*see supra* ¶27), the breakpoints fail to provide the MidCap Fund with an appropriate
share of the benefits of economies of scale realized by Defendant.  Significantly, the MidCap
Fund's investment advisory fee schedule has been in effect since at least 2011, and includes a
highest breakpoint set at only $3 billion in AUM, even though ***AUM has blown past that
breakpoint exceeding $8.8 billion*** by the end of fiscal year 2014.

**ANSWER:**  Paragraph 69 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 69

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the MidCap Fund's management fee schedule includes breakpoints, and that

the highest breakpoint is set at $3 billion.  Inasmuch as Paragraph 69 purports to incorporate the

allegations in Paragraph 27, PMC repeats and incorporates its responses to that paragraph as if

fully set forth herein.  PMC denies the remaining allegations in Paragraph 69.

70.     The MidCap Fund's average daily AUM increased more than $2.8 billion from
approximately $5.40 billion in fiscal year 2013 to approximately $8.24 billion in fiscal year
2014.  At the same time, the MidCap Fund's effective investment advisory rate decreased by
only one basis point, from 0.60% to 0.59%.  The one basis point reduction in the MidCap Fund's
effective investment advisory fee rate from 2013 to 2014 translates into no meaningful savings to
the fund.

**ANSWER:**  Paragraph 70 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 70

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC denies the allegations in Paragraph 70, and points out that Plaintiffs have not cited to any

document or source identifying where they obtained the "average daily AUM" values referenced

in those allegations, or that uses the term "effective investment advisory fee rate."

71.     In contrast, due to the increase in the MidCap Fund's AUM from 2013 to 2014,
the dollar amount of fees paid by the MidCap Fund increased by approximately $16,193,000
from $32,428,000 in fiscal year 2013 to $48,621,000 in fiscal year 2014.  Thus, the increase in
the MidCap Fund's AUM from 2013 to 2014 produced significant benefits to Defendant
(increased advisory fees) but no meaningful benefits to the MidCap Fund (minimal reduction in
the advisory fee rate).  To the extent the MidCap Fund achieved marginal economies of scale,
they were shared by its sub-adviser.  In fact, the sub-advisory fee schedule for the MidCap Fund
includes more breakpoints and a larger reduction in fee rate from the lowest to highest
breakpoint than Defendant's investment advisory fee schedule.

**ANSWER:**  Paragraph 71 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 71

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the management fees paid by the MidCap Fund were $32,428,000 in fiscal year

2013 and $48,621,000 in fiscal year 2014, as reflected in the Funds' Statement of Additional

Information, dated March 1, 2015 (as amended and restated August 24, 2015).  PMC denies the

remaining allegations in Paragraph 71.

72.     Defendant did not appropriately share with the MidCap Value III Fund the
benefits of economies of scale it realized in supervising and overseeing the MidCap Value III
Fund Sub-advisers or covering limited expenses for the fund.  Although the MidCap Value III
Fund's investment advisory fee schedule includes breakpoints (*see supra* ¶28), the breakpoints
fail to provide the MidCap Value III Fund with an appropriate share of the benefits of economies
of scale realized by Defendant.  The MidCap Value III Fund's average daily AUM increased
almost $400 million from approximately $476 million in fiscal year 2013 to approximately
$875 million in fiscal year 2014.  At the same time, the MidCap Value III Fund's effective
investment advisory rate decreased by only one basis point, from 0.65% to 0.64%.  The one basis
point reduction in the MidCap Value III Fund's effective investment advisory fee rate from 2013
to 2014 translates into no meaningful savings to the fund.

**ANSWER:**  Paragraph 72 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 72

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the MidCap Value III Fund's investment advisory fee schedule includes

breakpoints.  Inasmuch as Paragraph 72 purports to incorporate the allegations in Paragraph 28,

PMC repeats and incorporates its responses to that paragraph as if fully set forth herein.  PMC

denies the remaining allegations in Paragraph 72, and points out that Plaintiffs have not cited to

any document or source identifying where they obtained the "average daily AUM" values

referenced in those allegations, or that uses the term "effective investment advisory fee rate."

73.     In contrast, due to the increase in the MidCap Value III Fund's AUM from 2013
to 2014, the dollar amount of fees paid by MidCap Value III Fund increased by approximately
$2,504,000 from $3,097,000 in fiscal year 2013 to $5,601,000 in fiscal year 2014.  Moreover,
since the sub-advisory fee schedules that the MidCap Value III Fund Sub-advisers charged
Defendant for providing substantially all investment advisory services to the MidCap Value III

Fund remained constant from 2013 to 2014, Defendant was able to maintain the same fee retention rate.  Thus, the increase in the MidCap Value III Fund's AUM from 2013 to 2014 produced significant benefits to Defendant (increased advisory fees) but no meaningful benefits to the MidCap Value III Fund (minimal reduction in the advisory fee rate).  To the extent the MidCap Value III Fund achieved marginal economies of scale, they were shared by its sub-advisers.  In fact, compared to Defendant's investment advisory fee schedule, the sub-advisory fee schedules for the MidCap Value III Fund include more breakpoints, larger reductions in fee rate from the lowest to highest breakpoint, and one includes an equally high breakpoint.

**ANSWER:**  Paragraph 73 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 73

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC admits that the management fees paid by the MidCap Value III Fund were $3,097,000 in

fiscal year 2013 and $5,601,000 in fiscal year 2014, as reflected in the Funds' Statement of

Additional Information, dated March 1, 2015 (as amended and restated August 24, 2015).  PMC

denies the remaining allegations in Paragraph 73.

### THE FEES DEFENDANT CHARGES TO THE FUNDS ARE NOT NEGOTIATED AT ARM'S LENGTH

74.     Principal's breach of fiduciary duty via excessive fees under Section 36(b) is further evidenced by lack of care and consciousness inherent in the negotiation of the investment advisory fees Defendant charged the Funds.  The Board has consistently rubber-stamped the Management Agreement, including the investment advisory fee rates, despite: (i) Defendant's substantial mark-ups over the fees paid by Defendant to the Sub-advisers for providing substantially all of the investment advisory services required of Defendant under the Management Agreement; (ii) the minimal services performed and costs assumed by Defendant; (iii) the Funds' continued obligation to cover substantially all administrative costs under the Management Agreement; (iv) significant increase in the Funds' AUM; and (v) Defendant's failure to share with the Funds the benefits of economies of scale resulting from the AUM increases.  In addition, the Board approved the investment advisory fees for certain of the Funds despite those Funds underperforming their respective primary benchmarks.  Specifically, SmallCap Growth I Fund, SmallCap Fund, High Yield Fund, MidCap Fund, and MidCap Value III Fund underperformed their respective one-year primary benchmark for the most recently reported fiscal year.  The High Yield Fund and MidCap Value III Fund also underperformed their respective five-year primary benchmark for the most recently reported fiscal year.

- 53 -

**ANSWER:**  Paragraph 74 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 74 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC denies the allegations in Paragraph 74.

75.     Accordingly, the Funds' Board has consistently approved the Management Agreement and fee rates each year without devoting the time and attention necessary to *independently* assess the investment advisory fees paid by each Fund or to effectively represent the interests of Fund security holders vis-à-vis Defendant.  The Funds' and the seventy-eight other Principal Funds share an identical Board.  The Board conducts its oversight responsibilities not only for each of the Funds, but also for the seventy-eight other Principal Funds.  This includes approving investment advisory and other service contracts for each Fund, as well as other oversight responsibilities.  Because the members of the Funds' Board are stretched so thin within the Principal Funds they are required to oversee, the Board did not hold separate meetings for each of the Funds.

**ANSWER:**  Paragraph 75 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 75 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits that the Board oversees the Principal Funds, including the six at-issue Funds (but states that the Principal Funds, defined to be the mutual funds in the Principal Funds, Inc. complex, consist of 83 funds.  PMC further admits that, among its other duties, the Board approves the investment advisory and other service contracts for the Funds.  PMC denies the remaining allegations in Paragraph 75.

76.     Further, the investment advisory fees paid by the Funds under the Management Agreement are determined by Defendant.  In approving those fees, the Board has relied on information and analyses that were prepared by Defendant or were designed to support Defendant's rationalization for the fees charged to the Funds.  For example, the Board has inexplicably accepted Defendant's representations that the fee is justified by Defendant's supervision and oversight of the Sub-advisers and minimal accounting services.

**ANSWER:**  PMC denies the allegations in Paragraph 76.

77.     Defendant, however, has not provided, and the Board has not considered, information or analyses reflecting the interests of the Funds or their security holders with respect to the investment advisory fees or critically assessing Defendant's rationalization for those fees. Specifically, Defendant has not provided, and the Board has not considered, appropriate information about the value of the supervision and oversight services provided by Defendant to the Funds, the cost to Defendant of providing such services, the economies of scale realized by Defendant in providing such services, or the costs to Defendant for providing employees and facilities and limited accounting services.

**ANSWER:**  PMC denies the allegations in Paragraph 77.

78.     In addition, Defendant has not provided, and the Board has not considered the fee rates negotiated by other mutual funds for providing the same or substantially the same services. Critically, the Board failed to even consider that the Sub-advisers provide all the investment advisory services to the Funds for less than a third of the price Defendant charges, and failed to cause the Funds to contract directly with the Sub-advisers.  The Board also has not solicited proposals from other advisers to provide the supervision and oversight and limited accounting services purportedly provided to the Funds by Defendant under the Management Agreement.

**ANSWER:**  Paragraph 78 fails to comply with Fed. R. Civ. P. 8(d), which provides that

"[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 78

contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure,

PMC lacks knowledge and information sufficient to answer or deny the allegations in the third

sentence in Paragraph 78, and denies the remaining allegations in Paragraph 78.

79.     Finally, the "non-interested" directors that are supposed to serve as "watch-dogs" for the Funds and their security holders are in all practical respects dominated and unduly influenced by Defendant in reviewing the fees.  The directors' continuation in the role of "independent" directors from year-to-year, and the compensation they earn, is at least partially dependent on the continued goodwill and support of Defendant and the interested directors.

**ANSWER:**  PMC denies the allegations in Paragraph 79.

## THE EXCESSIVE INVESTMENT ADVISORY FEES HARM THE FUNDS

80.     The investment advisory fees are paid out of each Fund's assets.  Each dollar in fees paid by a Fund directly reduces the value of the Fund's investment portfolio.  Therefore, the payment of excessive investment advisory fees to Defendant harms each of the Funds on a going forward basis, because each Fund loses investment returns and profits it could earn on the amounts paid out as fees if those amounts remained in the Fund's portfolio and available for

investment.  Indeed, each Fund has sustained millions of dollars in damages due to the excessive investment advisory fees paid to Defendant.

**ANSWER:** Paragraph 80 fails to comply with Fed. R. Civ. P. 8(d), which provides that "[e]ach allegation **must** be simple, concise and direct."  (emphasis added).  Paragraph 80 contains multiple parts and subparts.

Notwithstanding Plaintiffs' failure to comply with the Federal Rules of Civil Procedure, PMC admits the allegations in the first two sentences of Paragraph 80.  PMC denies the remaining allegations in Paragraph 80.

## COUNT I

### On Behalf of the LargeCap Growth I Fund Against Defendant for Violation of ICA Section 36(b)

81.     Plaintiffs repeat and reallege each and every allegation contained ¶¶1-23, 29-31, 37-62, 74-80 above, as if fully set forth herein.

**ANSWER:**  PMC responds to the allegations incorporated in Paragraph 81 by repeating and incorporating its responses to the foregoing paragraphs as if fully set forth herein.

82.     Plaintiffs assert this Count on behalf of and for the benefit of the LargeCap Growth I Fund.

**ANSWER:**  The allegations in Paragraph 82 are legal conclusions that do not require an admission or denial, but to the extent that they do, PMC denies each and every allegation contained in this paragraph.

83.     Defendant is the investment adviser to the LargeCap Growth I Fund.

**ANSWER:**  PMC admits the allegations in Paragraph 83.

84.     Under Section 36(b) of the ICA, Defendant owes a fiduciary duty to the LargeCap Growth I Fund with respect to its receipt of investment advisory fees and other compensation from the fund.

**ANSWER:**  The allegations in Paragraph 84 are legal conclusions that do not require an admission or denial, but to the extent that they do, PMC admits that Section 36(b) of the ICA

provides that "the investment adviser of a registered investment company shall be deemed to

have a fiduciary duty with respect to the receipt of compensation for services, or of payments of

a material nature, paid by such registered investment company, or by the security holders

thereof, to such investment adviser or any affiliated person of such investment adviser."   PMC

denies the remaining allegations in this paragraph.

85.     Defendant breached its fiduciary duty under Section 36(b) by charging investment
advisory fees to the LargeCap Growth I Fund that are so disproportionately large that they bear
no reasonable relationship to the value of the services provided by Defendant and could not have
been the product of arm's-length bargaining.

**ANSWER:**  PMC denies the allegations in Paragraph 85.

86.     As a direct, proximate, and foreseeable result of Defendant's breach of its
fiduciary duty under Section 36(b), the LargeCap Growth I Fund has sustained millions of
dollars in damages.

**ANSWER:**  PMC denies the allegations in Paragraph 86.

87.     Pursuant to Section 36(b)(3), Plaintiffs seek to recover, on behalf of and for the
benefit of the LargeCap Growth I Fund, the actual damages resulting from Defendant's breach of
its fiduciary duty, including the excessive investment advisory fees paid by the LargeCap
Growth I Fund to Defendant and investment returns that would have accrued to the LargeCap
Growth I Fund had those fees remained in the portfolio and available for investment.

**ANSWER:**  PMC denies that Plaintiffs are entitled to any relief from PMC under the

Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in

Paragraph 87.

88.     Alternatively, pursuant to Section 47, Plaintiffs seek rescission of the
Management Agreement and restitution of all excessive investment advisory fees paid by the
LargeCap Growth I Fund pursuant to the Management Agreement.

**ANSWER:**  PMC denies that Plaintiffs are entitled to any relief from PMC under the

Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in

Paragraph 88.

## COUNT II

### On Behalf of the SmallCap Growth I Fund Against Defendant for Violation of Section 36(b)

89.    Plaintiffs repeat and reallege each and every allegation contained ¶¶1-22, 24, 2930, 32, 37-60, 63-64, 74-80 above, as if fully set forth herein.

**ANSWER:**  PMC responds to the allegations incorporated in Paragraph 89 by repeating

and incorporating its responses to the foregoing paragraphs as if fully set forth herein.

90.    Plaintiffs assert this Count on behalf of and for the benefit of the SmallCap Growth I Fund.

**ANSWER:**  The allegations in Paragraph 90 are legal conclusions that do not require an

admission or denial, but to the extent that they do, PMC denies each and every allegation

contained in this paragraph.

91.    Defendant is the investment adviser to the SmallCap Growth I Fund.

**ANSWER:**  PMC admits the allegations in Paragraph 91.

92.    Under Section 36(b), Defendant owes a fiduciary duty to the SmallCap Growth I Fund with respect to its receipt of investment advisory fees and other compensation from the fund.

**ANSWER:**  The allegations in Paragraph 92 are legal conclusions that do not require an

admission or denial, but to the extent that they do, PMC admits that Section 36(b) of the ICA

provides that "the investment adviser of a registered investment company shall be deemed to

have a fiduciary duty with respect to the receipt of compensation for services, or of payments of

a material nature, paid by such registered investment company, or by the security holders

thereof, to such investment adviser or any affiliated person of such investment adviser."   PMC

denies the remaining allegations in this paragraph.

93.    Defendant breached its fiduciary duty under Section 36(b) by charging investment advisory fees to the SmallCap Growth I Fund that are so disproportionately large that they bear no reasonable relationship to the value of the services provided by Defendant and could not have been the product of arm's-length bargaining.

**ANSWER:** PMC denies the allegations in Paragraph 93.

94.     As a direct, proximate, and foreseeable result of Defendant's breach of its fiduciary duty under Section 36(b), the SmallCap Growth I Fund has sustained millions of dollars in damages.

**ANSWER:** PMC denies the allegations in Paragraph 94.

95.     Pursuant to Section 36(b)(3), Plaintiffs seek to recover, on behalf of and for the benefit of the SmallCap Growth I Fund, the actual damages resulting from Defendant's breach of its fiduciary duty, including the excessive investment advisory fees paid by the SmallCap Growth I Fund to Defendant and investment returns that would have accrued to the SmallCap Growth I Fund had those fees remained in the portfolio and available for investment.

**ANSWER:** PMC denies that Plaintiffs are entitled to any relief from PMC under the

Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in

Paragraph 95.

96.     Alternatively, pursuant to Section 47, Plaintiffs seek rescission of the Management Agreement and restitution of all excessive investment advisory fees paid by the SmallCap Growth I Fund pursuant to the Management Agreement.

**ANSWER:** PMC denies that Plaintiffs are entitled to any relief from PMC under the

Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in

Paragraph 96.

## COUNT III

### On Behalf of the SmallCap Fund Against Defendant
### for Violation of Section 36(b)

97.     Plaintiffs repeat and reallege each and every allegation contained ¶¶1-22, 25, 2930, 33, 37-60, 65-66, 74-80 above, as if fully set forth herein.

**ANSWER:** PMC responds to the allegations incorporated in Paragraph 97 by repeating

and incorporating its responses to the foregoing paragraphs as if fully set forth herein.

98.     Plaintiffs assert this Count on behalf of and for the benefit of the SmallCap Fund.

**ANSWER:**  The allegations in Paragraph 98 are legal conclusions that do not require an admission or denial, but to the extent that they do, PMC denies each and every allegation contained in this paragraph.

99.    Defendant is the investment adviser to the SmallCap Fund.

**ANSWER:**  PMC admits the allegations in Paragraph 99.

100.    Under Section 36(b), Defendant owes a fiduciary duty to the SmallCap Fund with respect to its receipt of investment advisory fees and other compensation from the fund.

**ANSWER:**  The allegations in Paragraph 100 are legal conclusions that do not require an admission or denial, but to the extent that they do, PMC admits that Section 36(b) of the ICA provides that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser."   PMC denies the remaining allegations in this paragraph.

101.    Defendant breached its fiduciary duty under Section 36(b) by charging investment advisory fees to the SmallCap Fund that are so disproportionately large that they bear no reasonable relationship to the value of the services provided by Defendant and could not have been the product of arm's-length bargaining.

**ANSWER:**  PMC denies the allegations in Paragraph 101.

102.    As a direct, proximate, and foreseeable result of Defendant's breach of its fiduciary duty under Section 36(b), the SmallCap Fund has sustained millions of dollars in damages.

**ANSWER:**  PMC denies the allegations in Paragraph 102.

103.    Pursuant to Section 36(b)(3), Plaintiffs seek to recover, on behalf of and for the benefit of the Income Fund, the actual damages resulting from Defendant's breach of its fiduciary duty, including the excessive investment advisory fees paid by the SmallCap Fund to Defendant and investment returns that would have accrued to the SmallCap Fund had those fees remained in the portfolio and available for investment.

**ANSWER:** PMC denies that Plaintiffs are entitled to any relief from PMC under the

Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in

Paragraph 103.

104.    Alternatively, pursuant to Section 47, Plaintiffs seek rescission of the
Management Agreement and restitution of all excessive investment advisory fees paid by the
SmallCap Fund pursuant to the Management Agreement.

**ANSWER:** PMC denies that Plaintiffs are entitled to any relief from PMC under the

Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in

Paragraph 104.

## COUNT IV

### On Behalf of the High Yield Fund Against Defendant for Violation of Section 36(b)

105.    Plaintiffs repeat and reallege each and every allegation contained ¶¶1-22, 26, 29-
30, 34, 37-60, 67-68, 74-80 above, as if fully set forth herein.

**ANSWER:** PMC responds to the allegations incorporated in Paragraph 105 by repeating

and incorporating its responses to the foregoing paragraphs as if fully set forth herein.

106.    Plaintiffs assert this Count on behalf of and for the benefit of the High Yield
Fund.

**ANSWER:** The allegations in Paragraph 106 are legal conclusions that do not require an

admission 106 denial, but to the extent that they do, PMC denies each and every allegation

contained in this paragraph.

107.    Defendant is the investment adviser to the High Yield Fund.

**ANSWER:** PMC admits the allegations in Paragraph 107.

108.    Under Section 36(b), Defendant owes a fiduciary duty to the High Yield Fund
with respect to its receipt of investment advisory fees and other compensation from the fund.

**ANSWER:** The allegations in Paragraph 108 are legal conclusions that do not require an

admission or denial, but to the extent that they do, PMC admits that Section 36(b) of the ICA

provides that "the investment adviser of a registered investment company shall be deemed to

have a fiduciary duty with respect to the receipt of compensation for services, or of payments of

a material nature, paid by such registered investment company, or by the security holders

thereof, to such investment adviser or any affiliated person of such investment adviser."   PMC

denies the remaining allegations in this paragraph.

109.    Defendant breached its fiduciary duty under Section 36(b) by charging investment advisory fees to the High Yield Fund that are so disproportionately large that they bear no reasonable relationship to the value of the services provided by Defendant and could not have been the product of arm's-length bargaining.

**ANSWER:**  PMC denies the allegations in Paragraph 109.

110.    As a direct, proximate, and foreseeable result of Defendant's breach of its fiduciary duty under Section 36(b), the High Yield Fund has sustained millions of dollars in damages.

**ANSWER:**  PMC denies the allegations in Paragraph 110.

111.    Pursuant to Section 36(b)(3), Plaintiffs seek to recover, on behalf of and for the benefit of the High Yield Fund, the actual damages resulting from Defendant's breach of its fiduciary duty, including the excessive investment advisory fees paid by the High Yield Fund to Defendant and investment returns that would have accrued to the High Yield Fund had those fees remained in the portfolio and available for investment.

**ANSWER:**  PMC denies that Plaintiffs are entitled to any relief from PMC under the

Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in

Paragraph 111.

112.    Alternatively, pursuant to Section 47, Plaintiffs seek rescission of the Management Agreement and restitution of all excessive investment advisory fees paid by the High Yield Fund pursuant to the Management Agreement.

**ANSWER:**  PMC denies that Plaintiffs are entitled to any relief from PMC under the

Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in

Paragraph 112.

## COUNT V

### On Behalf of the MidCap Fund Against Defendant for Violation of Section 36(b)

113.     Plaintiffs repeat and reallege each and every allegation contained ¶¶1-22, 27, 29-30, 35, 37-60, 69-71, 74-80 above, as if fully set forth herein.

**ANSWER:**  PMC responds to the allegations incorporated in Paragraph 113 by repeating and incorporating its responses to the foregoing paragraphs as if fully set forth herein.

114.     Plaintiffs assert this Count on behalf of and for the benefit of the MidCap Fund.

**ANSWER:**  The allegations in Paragraph 114 are legal conclusions that do not require an admission or denial, but to the extent that they do, PMC denies each and every allegation contained in this paragraph.

115.     Defendant is the investment adviser to the MidCap Fund.

**ANSWER:**  PMC admits the allegations in Paragraph 115.

116.     Under Section 36(b), Defendant owes a fiduciary duty to the MidCap Fund with respect to its receipt of investment advisory fees and other compensation from the fund.

**ANSWER:**  The allegations in Paragraph 116 are legal conclusions that do not require an admission or denial, but to the extent that they do, PMC admits that Section 36(b) of the ICA provides that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser."   PMC denies the remaining allegations in this paragraph.

117.     Defendant breached its fiduciary duty under Section 36(b) by charging investment advisory fees to the MidCap Fund that are so disproportionately large that they bear no reasonable relationship to the value of the services provided by Defendant and could not have been the product of arm's-length bargaining.

**ANSWER:**  PMC denies the allegations in Paragraph 117.

118.    As a direct, proximate, and foreseeable result of Defendant's breach of its fiduciary duty under Section 36(b), the MidCap Fund has sustained millions of dollars in damages.

**ANSWER:**  PMC denies the allegations in Paragraph 118.

119.    Pursuant to Section 36(b)(3), Plaintiffs seek to recover, on behalf of and for the benefit of the MidCap Fund, the actual damages resulting from Defendant's breach of its fiduciary duty, including the excessive investment advisory fees paid by the MidCap Fund to Defendant and investment returns that would have accrued to the MidCap Fund had those fees remained in the portfolio and available for investment.

**ANSWER:**  PMC denies that Plaintiffs are entitled to any relief from PMC under the

Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in

Paragraph 119.

120.    Alternatively, pursuant to Section 47, Plaintiffs seek rescission of the Management Agreement and restitution of all excessive investment advisory fees paid by the MidCap Fund pursuant to the Management Agreement.

**ANSWER:**  PMC denies that Plaintiffs are entitled to any relief from PMC under the

Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in

Paragraph 120.

## COUNT VI

**On Behalf of the MidCap Value III Fund Against Defendant for
Violation of Section 36(b)**

121.    Plaintiffs repeat and reallege each and every allegation contained ¶¶1-22, 28-30, 36-60, 72-80 above, as if fully set forth herein.

**ANSWER:**  PMC responds to the allegations incorporated in Paragraph 121 by repeating

and incorporating its responses to the foregoing paragraphs as if fully set forth herein.

122.    Plaintiffs assert this Count on behalf of and for the benefit of the MidCap Value III Fund.

**ANSWER:**  The allegations in Paragraph 122 are legal conclusions that do not require an admission or denial, but to the extent that they do, PMC denies each and every allegation contained in this paragraph.

123.    Defendant is the investment adviser to the MidCap Value III Fund.

**ANSWER:**  PMC admits the allegations in Paragraph 123.

124.    Under Section 36(b), Defendant owes a fiduciary duty to the MidCap Value III Fund with respect to its receipt of investment advisory fees and other compensation from the fund.

**ANSWER:**  The allegations in Paragraph 124 are legal conclusions that do not require an admission or denial, but to the extent that they do, PMC admits that Section 36(b) of the ICA provides that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser."   PMC denies the remaining allegations in this paragraph.

125.    Defendant breached its fiduciary duty under Section 36(b) by charging investment advisory fees to the MidCap Value III Fund that are so disproportionately large that they bear no reasonable relationship to the value of the services provided by Defendant and could not have been the product of arm's-length bargaining.

**ANSWER:**  PMC denies the allegations in Paragraph 125.

126.    As a direct, proximate, and foreseeable result of Defendant's breach of its fiduciary duty under Section 36(b), the MidCap Value III Fund has sustained millions of dollars in damages.

**ANSWER:**  PMC denies the allegations in Paragraph 126.

127.    Pursuant to Section 36(b)(3), Plaintiffs seek to recover, on behalf of and for the benefit of the MidCap Value III Fund, the actual damages resulting from Defendant's breach of its fiduciary duty, including the excessive investment advisory fees paid by the MidCap Value III Fund to Defendant and investment returns that would have accrued to the MidCap Value III Fund had those fees remained in the portfolio and available for investment.

**ANSWER:** PMC denies that Plaintiffs are entitled to any relief from PMC under the Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in Paragraph 127.

128.    Alternatively, pursuant to Section 47, Plaintiffs seek rescission of the Management Agreement and restitution of all excessive investment advisory fees paid by the MidCap Value III Fund pursuant to the Management Agreement.

**ANSWER:** PMC denies that Plaintiffs are entitled to any relief from PMC under the Investment Company Act of 1940 (or otherwise), and therefore denies the allegations in Paragraph 128.

*     *     *

PMC denies each and every averment in the Complaint not specifically admitted herein.

## PRAYER FOR RELIEF

To the extent that any response is required for Plaintiffs' prayer for relief, PMC denies each and every allegation contained therein.

## AFFIRMATIVE DEFENSES

By alleging the Affirmative Defenses set out below, PMC does not intend to alter the burden of proof and/or burden of going forward with evidence which would otherwise exist with respect to any particular issues at law or in equity.  Furthermore, all such defenses are pleaded in the alternative, and do not constitute an admission of liability or an admission that Plaintiffs are entitled to any relief whatsoever.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, estoppel, laches, disclosure and/or consent, ratification, unclean hands, and/or other related doctrines.

## THIRD AFFIRMATIVE DEFENSE

The Investment Company Act limits recovery of any damages to those incurred during the period one year before the institution of the action.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs have not suffered any losses or damages proximately caused by their purported investments in the Funds or by any breach of fiduciary as alleged in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE

The Investment Company Act limits any award of damages "to the actual damages resulting from the breach of fiduciary duty," which therefore limits Plaintiffs' demands for "compensatory damages," "restitution," and other forms of damages.

## SIXTH AFFIRMATIVE DEFENSE

Each Plaintiff who is not a security holder in one of the Funds lacks standing to pursue any claims on behalf of that Fund.

## ADDITIONAL AFFIRMATIVE DEFENSE

PMC may have additional, as yet unidentified defenses available.  Additional defenses may be revealed by further investigation or through discovery.  Accordingly, PMC reserves the right to assert any and all such defenses in a timely fashion after the facts to support such defenses become known to them.


WHEREFORE, PMC prays that this Court enter judgment in its favor as follows:

1.      That judgment be entered in favor of PMC;

2.      That Plaintiffs take nothing from PMC and that the Complaint be dismissed with prejudice;

3.     For costs, attorneys' fees, expert witness fees, and court costs incurred herein; and

4.     For such other and further relief as this Court deems just and proper.

Dated:  March 7, 2016                          /s/  Mark B. Blocker

Angel A. West, AT0008416
aaw@nyemaster.com
NYEMASTER GOODE, P.C.
700 Walnut Street
Suite 1600
Des Moines, Iowa 50309
Telephone:(515) 283-3127
Facsimile: (515) 283-3108

Kevin H. Collins, AT0001671
khcollins@nyemaster.com
NYEMASTER GOODE, P.C.
One GreatAmerica Plaza
625 First Street SE
Cedar Rapids, Iowa 52401
Telephone:(319) 286-7003
Facsimile: (319) 286-7050

Mark B. Blocker (admitted pro hac vice)
mblocker@sidley.com
Lisa E. Schwartz (admitted pro hac vice)
lschwartz@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn St.
Chicago, Illinois 60603
Telephone:(312) 853-7000
Facsimile: (312) 853-7036

Alex J. Kaplan (admitted pro hac vice)
ajkaplan@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone:(212) 839-5300
Facsimile: (212) 839-5599

## CERTIFICATE OF SERVICE

I certify that on March 7, 2016, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the parties participating in the Court's electronic filing system.

/s/ Mark B. Blocker